**Thomas TELLEZ, Plaintiff-Appellant,**

v.

**PACIFIC GAS AND ELECTRIC COM-PANY, INC., and Does I–X, inclusive, Defendants-Appellees.**

No. 85–2774.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 9, 1986.

Decided May 15, 1987.

Edith J. Benay, San Francisco, Cal., for plaintiff-appellant.

Maureen L. Fries, San Francisco, Cal., for defendants-appellees.

Before CHOY, GOODWIN and PREGERSON, Circuit Judges.

GOODWIN, Circuit Judge:

Thomas Tellez appeals a summary judgment in favor of his employer, Pacific Gas & Electric Company, Inc. (PG & E). The district court held that Tellez's claims alleging violations of California tort law were preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), or, in the alternative, lacked merit. We reverse.

Tellez has worked for PG & E since 1972, and is a member of Local No. 1245 of the International Brotherhood of Electrical Workers. The collective bargaining agreement between the union and PG & E prohibits discipline without just cause and establishes grievance procedures for resolving employer-employee disputes.

In 1983, PG & E began investigating drug use among its employees. On December 12, 1983, a "station helper" at Tellez's station told the security department:

On December 3, 1983, [employee # 1] showed me a small package of white powder which he told me was cocaine which he was selling for $50.00 a packet.

During the day, I saw [him] meet with [Tellez and two other employees]. They would walk off together and [employee # 1] would return with the cash which he showed me. In the afternoon, [employee # 1] told me that he had sold all of the cocaine and had made $1000.00.

On December 13, the PG & E security department asked Tellez whether he had ever been intoxicated on the job and whether he was taking any medication. Tellez denied that he had ever taken drugs or medication on the job.

Richard S. Bain, PG & E's manager of station construction, concluded from the station helper's report that Tellez had bought cocaine on the job. Bain sent Tellez a letter suspending him without pay for ten days. The suspension letter stated, in part:

> You were observed to purchase cocaine from another employee at units 7 and 8. Although you denied this allegation during the December 13 interview, we are satisfied that the transaction did occur.

Bain sent copies of the letter to eleven other PG & E managers.

Tellez's union filed a grievance and a review panel ultimately concluded that PG & E lacked just cause to suspend Tellez. The panel awarded Tellez lost wages, plus interest, and ordered PG & E to expunge the suspension order from his personnel file.

Tellez then sued PG & E in the state court, alleging breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, negligent infliction of emotional distress, and defamation. PG & E removed the action to federal court and moved for summary judgment on the ground that Section 301 preempted Tellez's state law claims. The district court agreed that the claims were preempted and entered judgment for PG & E. On appeal, Tellez concedes that removal was proper but argues that the district court erred in holding that Section 301 preempted his tort claims.

Section 301 vests jurisdiction in the federal courts to hear claims for violation of labor contracts. 29 U.S.C. § 185(a). Actions in federal or state[1] court alleging breach of a labor contract must either be brought under Section 301 and resolved according to federal law or dismissed as preempted. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210, 105 S.Ct. 1904, 1911, 85 L.Ed.2d 206 (1985).

*Allis-Chalmers* is the leading case interpreting Section 301. The Court held that parties cannot escape the preemptive effect of Section 301 by casting their claims as tort claims rather than contract claims. *Id.* at 210, 105 S.Ct. at 1911. The Court held that the key to determining the scope of preemption is not how the complaint is cast, but whether the claims can be resolved only by referring to the terms of the collective bargaining agreement. *Id.* at 213, 105 S.Ct. at 1912. "Any other result would elevate form over substance and allow parties to evade the requirements of § 301 by relabeling their contract claims as claims for tortious breach of contract." *Id.* at 211, 105 S.Ct. at 1911. The Court expressed concern that such evasion could emasculate the arbitration process. *Id.* at 219, 105 S.Ct. 1915. On the other hand, the Court noted that Section 301 does not preempt every dispute concerning employment or tangentially involving a collective bargaining agreement; for example, state rules proscribing conduct or establishing rights and obligations independent of a labor contract are not preempted. *Id.* at 211–12, 105 S.Ct. at 1910–11.

The Court framed the test for preemption of a tort claim as whether the tort "confers nonnegotiable state-law rights on employers or employees independent of any right established by contract, or, instead, whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract." 471 U.S. at 213, 105 S.Ct. at 1912.

Under *Allis-Chalmers,* the district court had to decide whether Tellez's claims derive from, or require interpretation of, his

---

**1.** State courts have concurrent jurisdiction over Section 301 claims. *Charles Dowd Box Co. v.* *Courtney,* 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962).

collective bargaining agreement. If they do not, the court must determine whether permitting the state law claims to proceed would infringe upon the arbitration process established by the collective bargaining agreement.

### 1. *Defamation*

■ Tellez alleges that PG & E defamed him by distributing copies of a letter maliciously and falsely accusing him of buying cocaine on the job. This claim neither asserts rights deriving from the collective bargaining agreement, nor requires interpretation of the agreement's terms. California's defamation law establishes nonnegotiable rights and obligations independent of any labor contract. One can sue for defamation regardless of employment status or union membership.[2]

Further, PG & E cannot plausibly maintain that Tellez's claim implicates the collective bargaining agreement. The agreement simply does not govern Bain's allegedly defamatory conduct. It neither requires management to send written notice of suspension nor provides guidelines in the event such notice is sent. Thus, Bain could not have been acting under the terms of the collective bargaining agreement when he sent the suspension letter. It follows that the resolution of Tellez's defamation claim does not require interpretation or consideration of the agreement.

Finally, the state court action could not supplant the arbitration process. The arbitration committee was empowered to determine only whether there was just cause for Tellez's suspension; it had no authority to decide questions of intent, privilege, and injury, and no standards by which to judge the defamation claim. The committee could award only back pay, reinstatement and expunction. State courts in tort actions, by contrast, cannot in this context make determinations of just cause for suspension, but do provide the sole means for pursuing a defamation claim for damages. The courts afford paths of inquiry and remedies totally distinct from those available through the arbitration procedure. We therefore conclude that permitting Tellez's state defamation claim to proceed does not impinge on the authority of the arbitration process contemplated by the parties' collective bargaining agreement.[3]

PG & E contends that Bain's letter was absolutely privileged, citing two Tenth Circuit cases, *Hasten v. Phillips Petroleum Co.,* 640 F.2d 274, (10th Cir.1981), and *General Motors Corp. v. Mendicki,* 367 F.2d 66 (10th Cir.1966). These cases hold that statements either required by the collective bargaining agreement or arising out of grievance proceedings are absolutely privileged. On this point we reserve judgment. In this case, PG & E's suspension letter was neither required by the collective bargaining agreement, nor a part of the grievance process (although it caused Tellez to

---

**2.** Outside the Section 301 context, the Supreme Court has recognized that claims for malicious defamation are only peripherally related to the policies of the Labor Management Relations Act. *Linn v. United Plant Guard Workers of America, Local 114,* 383 U.S. 53, 61, 86 S.Ct. 657, 662, 15 L.Ed.2d 582 (1966). *Linn* involved the application of the preemption doctrine in *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). The so-called *Garmon* doctrine concerns preemption under Sections 7 and 8 of the National Labor Relations Act, 29 U.S.C. §§ 157, 158, and operates to protect the primary jurisdiction of the National Labor Relations Board by making conduct arguably within the scope of Sections 7 or 8 subject to the exclusive jurisdiction of the Board. *Allis-Chalmers,* 471 U.S. at 213–14 n. 9, 105 S.Ct. at 1912–13 n. 9. Unlike Section 301 preemption analysis, the *Garmon* doctrine permits courts to balance federal and state interests

in determining whether state law should be preempted. *Id.; Bale v. General Tel. Co.,* 795 F.2d 775, 780 (9th Cir.1986). Cases such as *Linn,* which involve balancing, thus do not apply to Section 301 preemption issues. *Allis-Chalmers,* 471 U.S. at 213–14 n. 9, 105 S.Ct. at 1912–13 n. 9.

**3.** PG & E cites *Green v. Hughes Aircraft Co.,* 630 F.Supp. 423 (S.D.Cal.1985), for the proposition that statements made in the context of disciplinary investigations are automatically preempted by Section 301. However, *Green* is distinguishable. The plaintiff there apparently made no showing that the allegedly defamatory statements were published beyond those who had a legitimate employment interest in them. In this case, by contrast, Tellez has alleged malicious defamation and has averred that the letter was published beyond the "need to know" level.

invoke that process). *Hasten* and *General Motors* do not apply.

■ As an alternative ground for granting summary judgment, the district court held that Tellez's defamation claims lack merit as a matter of law. However, the complaint raises at least two genuine issues of fact: (1) whether Bain acted maliciously and with knowledge or reckless indifference as to the falsity of the charge, and (2) whether he sent the letter only to those people with a legitimate interest in the suspension.[4] We have reviewed the affidavits supporting PG & E's summary judgment motion, and are satisfied that they do not dispose of either of these issues. The pendent claims may proceed beyond summary judgment.

## 2. *Intentional Infliction of Emotional Distress*

Tellez's complaint alleges that PG & E deliberately and maliciously caused him extreme emotional distress by distributing the suspension letter. Tellez contends that Section 301 does not preempt this claim for two reasons. First, the tort of intentional infliction of emotional distress establishes rights and duties independent of the employment relationship. Second, to decide the claim a court need not refer to the labor agreement. We do not at this time decide whether the claim merely duplicates the defamation claim. We do hold, however, that the claim is not preempted by Section 301.

Like the tort of defamation, intentional infliction of emotional distress hinges on state of mind, causation and injury. It requires extreme and outrageous behavior when, as in the present case, no physical injury is alleged. *Alcorn v. Anbro Eng'g, Inc.,* 2 Cal.3d 493, 497–98, 468 P.2d 216, 218, 86 Cal.Rptr. 88, 90 (1970). The collective bargaining agreement does not envision such behavior, and its grievance mechanism is not equipped to redress it. In reviewing whether there was just cause to suspend Tellez, the grievance committee

would have no authority to decide whether PG & E had acted outrageously in sending the letter. Moreover, it could provide no remedy for such behavior.

PG & E argues that we have frequently held claims for intentional infliction of emotional distress preempted by Section 301, citing *Truex v. Garrett Freightlines, Inc.,* 784 F.2d 1347 (9th Cir.1985), and *Olguin v. Inspiration Consolidated Copper Co.,* 740 F.2d 1468 (9th Cir.1984). These cases, however, do not apply.

In *Truex,* plaintiffs were covered by a collective bargaining agreement that specified when and how discipline could be administered. Plaintiffs sued their employer in state court for intentional infliction of emotional distress, alleging that the employer issued them unjustified warning letters, supervised them excessively, and altered their work assignments. We found that plaintiffs' claims were, in essence, "claims that administration of discipline was improper under the standards set by the collective bargaining agreement." 784 F.2d at 1350. We held the claims preempted by Section 301 because they could not be resolved without recourse to the agreement. Similarly, in *Olguin,* we held that Section 301 preempted tort claims involving challenges to certain employment and work conditions covered by the collective bargaining agreement. 740 F.2d at 1475.

Unlike the agreements in *Truex* and *Olguin,* the present agreement is silent on work conditions, and vague on disciplinary formalities. It neither requires nor regulates suspension letters. Accordingly, examination or interpretation of the agreement would not help to resolve Tellez's claim. It follows that the claim should not be preempted.

Although Tellez's claim may eventually be shown to lack merit, we cannot so state as a matter of law. Tellez has alleged that malicious behavior on the part of Bain caused him emotional injury. His pleadings therefore raise material issues of fact

---

4. California recognizes a privilege for good faith statements made in connection with employment. Cal.Civ.Code § 47(3). Because this case involves summary judgment on the pleadings, Tellez can rest on his pleadings to defeat the motion.

that must proceed beyond summary judgment.

3. *Negligent Infliction of Emotional Distress*

For the reasons previously stated, we also remand Tellez's claim for negligent infliction of emotional distress. We note that this claim may be inconsistent with Tellez's other claims as it alleges negligent rather than intentional behavior. Nonetheless, Tellez is entitled to proceed on alternative theories until that point in the proceedings when one or more of the claims must be abandoned.

Reversed and remanded.