**Joseph Christopher COOK; Dorothy Cook, Plaintiffs–Appellants,**

v.

**LINDSAY OLIVE GROWERS, and Does 1 through 25, inclusive, Defendants–Appellees.**

No. 88–15741.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 14, 1990.

Decided Aug. 10, 1990.

Richard J. Papst, Chain, Younger, Lemucchi, Noriega, Cohn, Stiles & Rodriguez, Bakersfield, Cal., for plaintiffs-appellants.

Michael Jens F. Smith and Thomas M. Zulim, Jory, Peterson & Sagaser, Fresno, Cal., for defendants-appellees.

Before BOOCHEVER, WIGGINS and NOONAN, Circuit Judges.

BOOCHEVER, Circuit Judge:

Joseph Christopher Cook (Cook) and his wife Dorothy Cook appeal from the district court's grant of summary judgment to Lindsay Olive Growers (LOG). Cook argues that his claims for wrongful termination, breach of the covenant of good faith and fair dealing, intentional and negligent infliction of emotional distress, and employment discrimination on the basis of religion are not preempted by § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a) (1982). He also argues

that his common-law claims are not precluded by California's statutory remedy for religious discrimination, and that the district court erred in finding that LOG had reasonably accommodated his religious beliefs. We affirm.

## FACTS

In August of 1980, Cook began work as a boiler operator in LOG's olive processing plant. Cook was a member of General Teamsters Local 94, and a collective bargaining agreement (CBA) between the Teamsters and LOG was in effect throughout his employment.

As a member of the Worldwide Church of God, Cook was required to observe the sabbath and abstain from working from sunset Friday to sunset Saturday. This religious observance did not present a problem during his first four years of employment. The Lindsay plant operated seven days a week, twenty-four hours a day, and Cook was able to work a Sunday through Thursday night shift. In 1984, however, LOG changed its olive processing operations, and the plant began to operate on a five-day work week. Because no Sunday work was available, Cook was assigned to a standard night shift, Monday through Friday from 10 p.m. to 6 a.m. The Friday night work conflicted with his religious observance, but LOG did not require him to work that night. Two other boiler operators voluntarily covered Cook's Friday shift on a rotating basis; under the terms of the CBA, they could not receive overtime pay for the Saturday work following the Friday night shift. Cook thus worked only four shifts a week.

In September of 1986, the two other boiler operators informed LOG they were no longer willing to substitute for Cook on Friday nights. LOG responded by attempting to locate someone else at the plant qualified to operate the boiler on Cook's Friday night shift. LOG also called the Teamsters to discuss possible solutions, and contacted the California Employment Development Department (CEDD) to locate a one-day-per-week boilermaker to work Cook's Friday night shift. When these ef-

forts failed, LOG reviewed the openings at the processing plant for cannery mechanic positions for Cook, but there were none. For economic reasons, LOG decided against paying overtime to the other boiler operators to cover Cook's Friday night shift.

Finally, LOG transferred Cook to a general laborer position, Monday through Friday, 7 a.m. to 3 p.m., a schedule allowing Cook to observe his sabbath. The pay was $.80 less per hour than what Cook had been earning. Because Cook would have worked five rather than four shifts per week, however, his gross weekly pay would have increased by about forty dollars. Cook received notice of the transfer on October 10, 1986. He took personal leave from October 14 to 26. When he failed to report to work or call in on October 27 and five consecutive days thereafter, he was fired.

## PROCEDURE

Cook filed a grievance with the Teamsters. After a hearing on November 7, 1986, the grievance committee found that LOG was justified in firing Cook for refusing the work transfer and for not calling in prior to his shift for six days.

Eight months later, Cook and his wife Dorothy filed a complaint in California state court on July 9, 1987, alleging five causes of action: wrongful termination, breach of the implied covenant of good faith and fair dealing, intentional infliction of emotional distress, employment discrimination based on religious beliefs, and as to both Cook and his wife Dorothy, negligent infliction of emotional distress. LOG removed the action to federal district court, and Cook filed a first amended complaint there, deleting all references to the CBA and stating his fourth cause of action as for employment discrimination under Cal. Gov't Code § 12940 (West Supp.1990). After discovery was complete, LOG filed a motion for summary judgment. Following a hearing, the district court granted the motion.

The district court held that the basis of Cook's complaint was a breach of the CBA,

and as a result all his claims were preempted by § 301 of the LMRA. Summary judgment was awarded because Cook did not bring his action within the six-month federal statute of limitations governing suits against an employer for breach of a CBA. The court also ruled that even if the claims were not preempted, Cal.Gov't Code § 12940 provided an exclusive remedy displacing all common law remedies. Finally, it found that LOG reasonably accommodated Cook's religious observance as a matter of law.

### ISSUES

■ This court reviews de novo a grant of summary judgment, determining "whether, viewing the evidence in the light most favorable to the nonmoving party, there are any genuine issues of material fact and whether the district court applied the relevant substantive law." *Tzung v. State Farm Fire & Casualty Co.*, 873 F.2d 1338, 1339–40 (9th Cir.1989). The district court was correct in applying a six-month statute of limitations to any of Cook's claims which were preempted by § 301. *See DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 155, 103 S.Ct. 2281, 2285, 76 L.Ed.2d 476 (1983). We now analyze whether the district court properly found preemption.

■ Section 301 of the LMRA provides federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). Federal law exclusively governs a suit for breach of a CBA under § 301, whose broad preemptive scope entirely displaces any state cause of action based on a CBA, as well as any state claim whose outcome depends on analysis of the terms of the agreement. *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987). A claim is not preempted if it does not threaten significantly the collective bargaining process and if it furthers a state interest in protecting the public that transcends the employment relationship. *Chmiel v. Beverly Wilshire Hotel Co.*, 873 F.2d 1283, 1285 (9th Cir.1989). For preemption analysis, it is not dispositive that

Cook's first amended complaint is framed without reference to the CBA. Rather, preemption is required if his claims can be resolved only by referring to the terms of the agreement. *Newberry v. Pacific Racing Ass'n*, 854 F.2d 1142, 1146 (9th Cir. 1988). "[E]ven suits based on torts, rather than on breach of collective bargaining agreements, are governed by federal law if their evaluation is 'inextricably intertwined with consideration of the terms of [a] labor contract.'" *Miller v. AT & T Network Sys.*, 850 F.2d 543, 545 (9th Cir.1988) (quoting *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 213, 105 S.Ct. 1904, 1912, 85 L.Ed.2d 206 (1985)).

### I. WRONGFUL DISCHARGE

#### A. *Preemption under § 301*

■ Cook's complaint alleges that he had

> an oral contract of employment as modified by certain policies, practices, assurances and other statements, both oral and in writing.... for an indefinite term.... [D]ischarge, if any, would only be for good cause proven and then would be carried out only in accordance with the stated written policies of the employer.

The complaint explains Cook's sabbath observance and the accommodations made to it, and then alleges he was fired when "defendant breached its agreement with plaintiff by demanding that plaintiff report for work after dusk on Friday in direct conflict with plaintiff's religious beliefs and observances." Cook characterizes this claim as one for wrongful discharge in violation of public policy, and argues that it thus escapes federal preemption.

> Section 301 does not preempt [a claim] if it poses no significant threat to the collective bargaining process and furthers a state interest in protecting the public transcending the employment relationship. A claim is preempted, however, if it is not based on any genuine state public policy, or if it is bound up with interpretation of the collective bargaining agreement and furthers no state poli-

cy independent of the employment relationship.

*Young,* 830 F.2d at 1001–02 (citations omitted). The public policy cited by Cook is the prohibition on religious discrimination in Cal.Gov't Code § 12940(a), which provides that it is an unlawful employment practice "[f]or an employer, because of the ... religious creed ... of any person, ... to bar or to discharge such person from employment ... or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

There is no doubt that § 12940(a) establishes a California public policy against religious discrimination in the workplace. Nor would enforcement of the California statute require interpretation of the CBA. Although § 17(b) of the CBA provides "[t]here shall be no discrimination based upon ... religion ... as provided in Federal and State Laws," it does not follow that any allegation of discrimination requires an interpretation of the agreement. "[T]he mere fact that a broad contractual protection against discriminatory ... discharge may provide a remedy for conduct that coincidentally violates state law does not make the existence or the contours of the state law violation dependent upon the terms of the private contract." *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 412–13, 108 S.Ct. 1877, 1885, 100 L.Ed.2d 410 (1988), *quoted in Ackerman v. Western Elec. Co.,* 860 F.2d 1514, 1517 (9th Cir.1988). Cook's claim alleging discharge in violation of public policy is not preempted by § 301.[1]

### B. *Preemption by Cal.Gov't Code § 12940*

■ Although Cook's claim of wrongful discharge in violation of public policy survives federal preemption, it does not escape preemption by Cal.Gov't Code § 12940. California courts have held that there is no common law cause of action for discrimination under the California Fair Employment and Housing Act, Cal.Gov't Code §§ 12900–12996, because the California legislature intended the statute to be the exclusive remedy for a discriminatory wrongful discharge. *Strauss v. A.L. Randall Co.,* 144 Cal.App.3d 514, 519–21, 194 Cal.Rptr. 520, 523–24, (1983) (age discrimination); *Ficalora v. Lockheed Corp.,* 193 Cal.App.3d 489, 492, 238 Cal.Rptr. 360, 361–62 (1987) (sex discrimination and retaliatory discharge).

Federal courts have acknowledged this preemption. *See, e.g., Salgado v. Atlantic Richfield Co.,* 823 F.2d 1322, 1327 (9th Cir.1987) ("Under California law, the exclusive remedy for age discrimination claims arises under California's F[air] E[mployment and] H[ousing] A[ct]."). Section 12940(a) therefore provides the exclusive remedy for wrongful discharge actions based solely on allegations of religious discrimination. *Diem v. City and County of San Francisco,* 686 F.Supp. 806, 811 (N.D. Cal.1988). Cook's wrongful discharge claim is preempted by Cal.Gov't Code § 12940.[2]

## II. BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

■ Where the collective bargaining agreement contains terms governing job

1. We reject Cook's related argument that he was discharged in violation of an independent agreement with LOG about the way in which LOG would accommodate his sabbath. "[I]ndividual employment contracts are not inevitably superseded by any subsequent collective agreement covering an individual employee.... [A] plaintiff covered by a collective-bargaining agreement is permitted to assert legal rights *independent* of that agreement ... so long as the contract relied upon is *not* a collective-bargaining agreement." *Caterpillar Inc. v. Williams,* 482 U.S. 386, 396, 107 S.Ct. 2425, 2431, 96 L.Ed.2d 318 (1987) (emphasis in original). State-law claims based on such an independent contract would not be preempted under § 301. *Id.* at 394–95, 107 S.Ct. at 2430–31.

This court, however, has held that *Caterpillar's* exception to federal preemption does not apply when the job that is the subject matter of the purportedly independent contract is covered by the CBA, as in this case. *Young,* 830 F.2d at 997; *see Olguin v. Inspiration Consol. Copper Co.,* 740 F.2d 1468, 1474 (9th Cir.1984).

2. This circuit twice has held that claims of wrongful discharge and statutory claims of discrimination under § 12940 can survive federal preemption, without discussing whether the common law claims are preempted by the California statute. *See Jackson v. Southern California Gas Co.,* 881 F.2d 638, 643–44 (9th Cir.1989); *Chmiel,* 873 F.2d at 1286–87. The issue was not raised in the district court or on appeal in either case.

security, this breach of the covenant of good faith and fair dealing cause of action is preempted. *Jackson v. Southern California Gas Co.*, 881 F.2d 638, 644–45 (9th Cir.1989); *Young*, 830 F.2d at 999. The CBA does not expressly address the proper grounds for discharge, although it does indicate that LOG retains the "prerogative to discharge an employee for just cause." In addition, the CBA provides that loss of all seniority rights, which determine how jobs are filled, may follow a failure to report for work. The agreement also provides a grievance procedure for resolving disputes, which Cook pursued. Because his asserted right to reinstatement at the grievance hearing was based directly on the terms of the CBA, *see Newberry*, 854 F.2d at 1147, Cook's tort claim for breach of the implied covenant of good faith and fair dealing is preempted under § 301, and thus is barred by the six-month statute of limitations.

## III. EMOTIONAL DISTRESS

■ An emotional distress claim is not preempted when it can be resolved without examination or interpretation of the CBA. *Tellez v. Pacific Gas & Elec. Co.*, 817 F.2d 536, 539 (9th Cir.), *cert. denied*, 484 U.S. 908, 108 S.Ct. 251, 98 L.Ed.2d 209 (1987). If the CBA does not govern the offending behavior, § 301 does not preempt Cook's emotional distress claim. *Miller*, 850 F.2d at 550 n. 5. For this behavior to give rise to the tort of emotional distress under California law, it must be "so extreme and outrageous 'as to go beyond all possible bounds of decency.'" *Alcorn v. Anbro Eng'g, Inc.*, 2 Cal.3d 493, 499 n. 5, 468 P.2d 216, 219 n. 5, 86 Cal.Rptr. 88, 90 n. 5 (1970) (quoting *Restatement (Second) of Torts* § 46, comment (d) (1965)).

■ The offending behavior Cook complains of is LOG's demand that he report for work on Friday evening or accept a different job classification, and his termination. Here, as is often the case, the terms of the collective bargaining agreement must be examined and interpreted to determine whether LOG's behavior was extreme and outrageous. *See Miller*, 850

F.2d at 550 (if employer's behavior was permitted under the CBA, it might *per se* be reasonable). Although the CBA does not have a detailed section on discharge and the possible grounds therefor, it does indicate that discharge will be for cause, that shift assignments are determined by seniority, and that failure to report for work causes an employee to lose all seniority. It also provides a detailed grievance procedure, which Cook followed. Whether LOG's actions leading to Cook's transfer and discharge were outrageous depends on the interpretation of the CBA's provision for "just cause" discharge, and whether acts that could lead to the loss of seniority rights could be used as grounds for discharge.

By contrast, in *Tellez* the employee had been suspended following a report that he bought drugs on the job. A grievance panel concluded that the suspension was without just cause, awarded Tellez lost wages with interest, and ordered that the suspension order be expunged. *Tellez*, 817 F.2d at 537. Tellez then sued his employer, alleging among other claims that the company intentionally caused him extreme emotional distress by distributing the suspension letter to eleven company managers. *Id.* at 537, 539. This court found that the CBA was "silent on work conditions, and vague on disciplinary formalities. It neither requires nor regulates suspension letters." *Id.* at 539. As a result, examination of the agreement would have been irrelevant to deciding whether it was outrageous to circulate the letter, and Tellez's emotional distress claim was not preempted. *Id.*

Unlike *Tellez*, the basis of Cook's emotional distress claim is wrongful discharge, and requires evaluation of actions central to the employment relationship: a work transfer and Cook's eventual discharge for refusing the transfer and failing to call in. For this court to determine whether LOG acted outrageously in firing him would require us to evaluate, as the grievance committee did, whether LOG complied with the terms of the CBA regulating seniority and work transfers. *See Miller*, 850 F.2d at 551 (outrageousness of reassignment and

dismissal could depend on whether behavior violated CBA). Because Cook's emotional distress claim "arises out of [his] discharge and the defendants' conduct ... leading up to it [and] will require us to decide whether [his] discharge was justified under the terms of the collective bargaining agreement," *Newberry,* 854 F.2d at 1149, it is preempted by § 301. It is thus barred for failure to meet the six-month statute of limitations.

## IV. RELIGIOUS DISCRIMINATION IN EMPLOYMENT UNDER CAL. GOV'T CODE § 12940(a)

### A. *Preemption under § 301*

 To decide whether a state law claim is preempted under § 301, we consider

(1) whether the CBA contains provisions that govern the act giving rise to a state claim, and if so, (2) whether the state has articulated a standard sufficiently clear that the state claim can be evaluated without considering the overlapping provisions of the CBA, and (3) whether the state has shown an intent not to allow its prohibition to be altered or removed by private contract.

*Miller,* 850 F.2d at 548 (footnote omitted). The answer to the first question is yes; as discussed above, § 17(b) of the CBA prohibits religious discrimination.

The answer to the second question is also yes; California in § 12940(a) has articulated a clear standard that does not require interpretation of the CBA. As cited above in the discussion of Cook's claim for wrongful discharge in violation of public policy, "[t]he mere fact that a broad contractual protection against discriminatory ... discharge may provide a remedy for conduct that coincidentally violates state law does not make the existence or the contours of the state law violation dependent upon the terms of the private contract." *Lingle,* 486 U.S. at 412–13, 108 S.Ct. at 1885. In interpreting § 12940(a)'s prohibition on discrimination on the basis of physical handicap, this court has held that

California's statute confers upon employees certain rights not to be discriminated

against.... That right is defined and enforced under state law without reference to the terms of any collective bargaining agreement. [The employee's] state-law claim is consequently independent of the agreement. That [he] might also have separate remedies under the bargaining agreement makes no difference.

*Ackerman,* 860 F.2d at 1517 (footnote and citation omitted); *see Jackson,* 881 F.2d at 644 (enforcement of California public policy against racial discrimination in § 12940 would not require interpretation of collective bargaining agreement, so wrongful discharge claim not preempted); *Chmiel,* 873 F.2d at 1286 (age discrimination claim for wrongful discharge in violation of public policy under Cal.Gov't Code § 12941 not preempted).

Finally, the right not to be discriminated against on the basis of religion cannot be removed by private contract. Section 12940 confers a right that is nonnegotiable and applies to unionized and nonunionized workers. *Ackerman,* 860 F.2d at 1517 n. 2. Cook's claim under § 12940(a) is not preempted, and was filed within the statute's one-year limitations period. *See* Cal. Gov't Code § 12960 (West Supp.1990).

 We note that this conclusion is consistent with our finding that Cook's claim for emotional distress is preempted. Unlike his emotional distress claim, Cook's § 12940 claim does not require us to decide whether LOG's actions were reasonable under the CBA. Even when an employer acts according to a policy applied reasonably to other individuals with different religious beliefs, it might nevertheless violate § 12940(a); no discriminatory motive is required. *See Best v. California Apprenticeship Council,* 161 Cal.App.3d 626, 636, 207 Cal.Rptr. 863, 869 (1984). By contrast, whether behavior is outrageous enough to support an emotional distress claim could depend on whether an employer violated the CBA. *Miller,* 50 F.2d at 551. It follows that an employer's behavior that violates § 12940(a) will not necessarily give rise to a claim for emotional distress, as even good-faith actions may violate the

statute. *See Best,* 161 Cal.App.3d at 636, 207 Cal.Rptr. at 869.

#### B. *Reasonable Accommodation*

█ We now must determine whether LOG reasonably accommodated Cook's religious beliefs under Cal.Gov't Code § 12940(a). Federal precedent applies to provisions of the California Fair Employment and Housing Act analogous to Title VII. *Mixon v. Fair Employment and Housing Comm'n,* 192 Cal.App.3d 1306, 1316, 237 Cal.Rptr. 884, 890 (1987).

█ An employer must make reasonable accommodations of the religious needs of its employees, short of undue hardship. *Trans World Airlines, Inc. v. Hardison,* 432 U.S. 63, 66, 97 S.Ct. 2264, 2268, 53 L.Ed.2d 113 (1977). Cook does not dispute that LOG managers talked to the boilermakers who refused to continue to substitute for Cook, tried to locate someone else who was qualified to work Cook's Friday night shift, called the union to discuss the problem, contacted the CEDD to find a one-day-per-week boilermaker, looked into jobs at other companies, and tried to find Cook a cannery mechanic opening. When these efforts failed, the company transferred Cook into the general laborer position, which would allow him to observe his sabbath. The position paid less per hour, but because Cook would work five rather than four shifts, his gross pay would have increased. LOG refused to pay overtime so that the other boiler operators would continue to cover Cook's shift and allow Cook to remain in his job.

█ Cook asserts that summary judgment on the issue of whether these efforts were reasonable accommodation was inappropriate because a factual inquiry was necessary to determine whether the cost of paying overtime would be an undue hardship for LOG. As the district judge pointed out, however, the issue is not whether LOG can show that the overtime payment would be an undue hardship, but whether its attempts to accommodate Cook's sabbath were reasonable.

[A]ny reasonable accommodation by the employer is sufficient to meet its accommodation obligation.... Thus, where the employer has already reasonably accommodated the employee's religious needs, the statutory inquiry is at an end. The employer need not further show that each of the employee's alternative accommodations would result in undue hardship.

*Ansonia Bd. of Ed. v. Philbrook,* 479 U.S. 60, 68, 107 S.Ct. 367, 372, 93 L.Ed.2d 305 (1986). We note, however, that a company need not pay "premium wages" to accommodate an employee's sabbath observance. *TWA,* 432 U.S. at 84, 97 S.Ct. at 2277 ("To require [the employer] to bear more than a *de minimis* cost in order to give [the employee] Saturdays off is an undue hardship.")

█ LOG's other attempts to accommodate Cook's religious observance were reasonable. Allowing lateral transfers or changes of job assignments constitutes a reasonable accommodation. *See Hudson v. Western Airlines, Inc.,* 851 F.2d 261, 266 (9th Cir.1988). Even though Cook's transfer did constitute a move to a lower position, it resulted in a higher gross pay and followed efforts by LOG to avoid any loss of status or pay. Further, it may have been only temporary until a cannery maintenance mechanic position opened up. *See Draper v. United States Pipe & Foundry Co.,* 527 F.2d 515, 519–20 (6th Cir.1975) (transfer affecting employee adversely is reasonable accommodation as "last resort" where no work available in employee's current job classification). We find as a matter of law that LOG reasonably accommodated Cook's religious beliefs.

#### CONCLUSION

Section 301 preempts Cook's claims of breach of the covenant of good faith and fair dealing and intentional and negligent infliction of emotional distress. The claims therefore are barred by the six-month statute of limitations. Cal.Gov't Code § 12940 preempts his wrongful discharge claim. Finally, Cook's claim for religious discrimination in employment under § 12940(a) fails because LOG reasonably accommodat-

ed Cook's religion as a matter of law. We therefore AFFIRM the district court's grant of summary judgment.