Christopher BUSEY, Plaintiff,

v.

P.W. SUPERMARKETS, INC.,
et al., Defendant(s).

No. C 05–00201JW.

United States District Court,
N.D. California.
San Jose Division.

May 9, 2005.

Christopher Busey, San Jose, CA, Pro se.

Servando R. Sandoval, Thomas M. Gosselin, Pahl & Gosselin, APC, San Jose, CA, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS IN PART AND REMANDING ACTION TO STATE COURT

WARE, District Judge.

### I. INTRODUCTION

On December 8, 2004, Christopher Busey (hereafter "Plaintiff" or "Busey") brought this action for wrongful discharge and related torts against P.W. Supermarkets, Inc., a corporation, and two of its employees, Amber Del Monte, and Joylyn Buck (collectively "Defendants") in the Superior Court of Santa Clara County. On January 13, 2005, Defendants removed this matter from state court on grounds of federal preemption. Specifically, Defendants contend that Plaintiff's employment relationship was covered by a collective bargaining agreement, and that his claims are governed by Section 301 of the Labor Management Relations Act Section 301 ("LMRA" or "Section 301"). see 29 U.S.C. § 185(a).

Defendants have filed a motion to dismiss pursuant to Rule 12(b)(6) for the Federal Rules of Civil Procedure. This motion requires the Court to determine whether Plaintiff's causes of action under California law, including defamation, breach of contract and wrongful discharge, intentional infliction of emotional distress, and negligent training and supervision, are preempted by the LMRA. Plaintiff, in his Opposition, seeks remand of the case to state court.

On April 4, 2005, this Court heard arguments on Defendants' motion to dismiss and Plaintiff's opposition and request for remand. After careful consideration of the parties' moving papers and oral arguments, Defendants' motion to dismiss

Plaintiff's Third, Fourth, and Sixth claims is GRANTED. Defendants' motion to dismiss Plaintiff's First, Second, and Fifth claims is DENIED because they are independent state-law claims not preempted by Section 301 and thus, the Court REMANDS these claims to the state court.

### II. BACKGROUND

Plaintiff was hired as a cake decorator by Defendant P.W. Supermarkets and began working at Store–6 on September 15, 2002. During his employment, Plaintiff was a member of the Bakery, Confectionary, Tobacco Workers and Grain Millers International. Union, AFL–CIO, Local No. 24. His position was governed by the Collective Bargaining Agreement ("CBA") entered into between his employer and the Union.

Shortly after his employment, Plaintiff was promoted as a "floater" (a person who floats to multiple stores). While "floating", the Plaintiff worked at Defendant PW Supermarkets' Store–9. Co-defendant Del Monte was the Bakery Manager of Store–9 during the time Plaintiff worked there. Plaintiff alleges that on October 1, 2002, Del Monte composed and published a memorandum asserting false allegations and defamatory statements concerning Plaintiff's abilities and competence in his occupational trade, and Plaintiff's character in general. (Complaint ¶¶ 10–13).

Plaintiff was terminated on October 22, 2002. According to Plaintiff, he contacted Frank Valdez, his union representative, on the day he was terminated to complained "that he had been treated unfairly and had been discharged in a publicly humiliating manner." (Complaint ¶ 23). On December 2, 2002, Valdez told Plaintiff that his investigation revealed no misconduct by Defendants and thus, the union was unable to resolve Plaintiff's complaints. *Id.*

**1048**

On January 13, 2004, Plaintiff requested that the Human Resource Department of PW Supermarkets allow him to review his personnel file. Plaintiff asserts that upon review of his file on January 14, 2004, he discovered, for the first time, the false allegations and defamatory statements made by Defendant Del Monte. Plaintiff filed this complaint on December 8, 2004 in state court.

Plaintiff alleges that Del Monte's allegations and defamatory statements were done with the intention of causing him severe emotional distress, or were done with a willful and conscious disregard of the likelihood and probability of causing Plaintiff such distress. Plaintiff further alleges that he has suffered loss of his reputation, unjustified discipline, and was discharged from his employment as the result of Defendant Del Monte's actions. (Complaint ¶ 20–21). Plaintiff further alleges that P.W. Supermarkets is vicariously libel for Defendant Del Monte's actions, and for Defendant Buck's negligent training of Defendant Del Monte. (Complaint ¶ 31–33). Plaintiff also alleges breach of contract and breach of the implied covenant of good faith and fair dealing inherent in PW Supermarkets' personnel policies, company procedure manuals, and employees guidelines. (Complaint ¶ 36–37).

### III. STANDARDS

Plaintiff contends that his complaint does not facially invoke federal jurisdiction and, therefore, was improperly removed to the federal court. Thus, the Court must address whether removal was proper, and if proper, whether a Rule 12(b)(6) is warranted for failure to state claims upon which relief is appropriate.

■ A suit may be removed to federal district court only if it could have been brought there originally. 28 U.S.C. § 1441(a); *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429–30,

96 L.Ed.2d 318, (1987). Absent diversity of citizenship, federal question jurisdiction is required. *Id.* The presence or absence of federal question jurisdiction that will support removal is governed by the "well-pleaded complaint rule", which provides that federal jurisdiction exists only when a federal question is presented on the face of the complaint. *Id.* Ordinarily, a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption. *Id.* at 393, 107 S.Ct. at 2430; *Franchise Tax Board of Cal. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 12, 103 S.Ct. 2841, 2847–2848 (1983).

■ Under the "complete preemption doctrine," however, once an area of state law has been completely preempted, any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law and is removable. *Caterpillar*, 482 U.S. at 393, 107 S.Ct. at 2430. "Controversies involving collective bargaining agreements constitute one such area." *Galvez v. Kuhn*, 933 F.2d 773, 776 (9th Cir.1991), *citing Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410, (1988). Accordingly, this Court need only inquire whether Plaintiff's claims arise under section 301 of the LMRA, thus permitting removal to federal court, although Plaintiff seeks remedies available under state law.

■ Section 301 of the LMRA provides federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). Federal law under section 301 governs suits for breach of a Collective Bargaining Agreement (hereafter "CBA") and displaces any state claim based on a CBA, as well as any state claim whose outcome depends on interpretation of the terms of a CBA. *Young v. Anthony's Fish*

*Grottos, Inc.,* 830 F.2d 993, 997 (9th Cir. 1987); *Miller v. AT & T Network Systems,* 850 F.2d 543, 545 (9th Cir.1998); *Cook v. Lindsay Olive Growers,* 911 F.2d 233, 237 (9th Cir.1990).

■ It is not dispositive that a complaint is framed without reference to a CBA. *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 210–211, 105 S.Ct. 1904, 1910–1911, 85 L.Ed.2d 206 (1985). Rather, state claims which require interpretation of a CBA, or is "substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract," are preempted by Section 301. *Lingle,* 486 U.S. at 410, 108 S.Ct. at 1883; *Allis–Chalmers,* 471 U.S. at 213, 105 S.Ct. at 1912. Thus, even suits based on torts, rather than on breach of a CBA, are governed by federal law if their evaluation is "inextricably intertwined with consideration of the terms of [a] labor contract." *Id.*

■ Section 301, however, does not preempt every claim concerning employment or tangentially involving a provision of a CBA. *Id.* at 211, 105 S.Ct. at 1911. If a court can uphold state rights without interpreting the terms of a CBA, the state claim is not necessarily preempted. *Id.* "[N]onnegotiable state-law right . . . independent of any right established by contract" are not preempted. *Id.* at 213, 105 S.Ct. at 1912–13.

A complaint may be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A claim may be dismissed as a matter of law for: "(1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal theory." *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 534 (9th Cir. 1984). "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*

*v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The court "must presume all factual allegations of the complaint to be true -and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir.1987). In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint. *Schneider v. California Dept. of Corrections,* 151 F.3d 1194, 1197 (9th Cir.1998) ("The focus of any Rule 12(b)(6) dismissal . . . is the complaint"). A court may dismiss a case without leave to amend if the Plaintiff is unable to cure the defect by amendment. *Lopez v. Smith,* 203 F.3d 1122, 1129 (9th Cir.2000).

As a general rule, "a district court may not consider any material beyond the pleadings in ruling on a 12(b)(6) motion." *Branch v. Tunnell,* 14 F.3d 449 (9th Cir. 1994), *quoting Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1555 n. 19 (9th Cir.1990). Two notable exceptions are that (1) the court may take judicial notice of matters of public record, Fed.R.Evid. 201(b)(2); *Mack v. South Bay Beer Distributors,* 798 F.2d 1279, 1282 (9th Cir.1986); and (2) the court may consider a document not attached to the complaint if the complaint specifically refers to it and its authenticity is not questioned. Fed. R.Evid. 201(f); *Townsend v. Columbia Operations,* 667 F.2d 844, 848–49 (9th Cir. 1982).

## IV. DISCUSSION

Under the above legal standards, Defendants' removal of this action was appropriate. This Court also grants Defendants' request for judicial notice of the collective bargaining agreement between P.W. Supermarkets and Plaintiff's Union, the Bakery, Confectionery and Tobacco Workers' International Union, Local 24 AFL–CIO, CLC. (Request for Judicial Notice in Sup-

port of Defendants P.W. Supermarkets, Inc., Amber Del Monte, and Joylyn Buck's Motion to Dismiss).

### A. *Plaintiff's Defamation Claim is an Independent State Claim and is Not Preempted by Section 301.*

Plaintiff alleges that Defendant Del Monte placed a false memorandum in his personnel file denigrating his performance. Statements in the memorandum included: "This guy is ridiculous"; "he left silverware with crap still on it"; "the cake looked like crap"; "his filling sucks"; "his cakes look half ass"; "[he] takes 4 to 5 breaks". The memorandum also claimed that Defendant Del Monte had confronted Plaintiff about these issues. Plaintiff alleges that Defendant Del Monte published the false memorandum through the use of the company's Internet or Intranet domain. The memorandum was electronically transmitted to various agents, servants, employees, including employees outside the scope of managerial privilege and various management personnel who had the express authority to discipline him. Plaintiff alleges that Del Monte published the memorandum knowing the statements contained in it to be false, or acting in reckless disregard of the truth or falsity of the statements or whether they would defame him. (Complaint ¶ 14–17). Defendants contend that Plaintiff's defamation claim is preempted because the alleged defamatory statements are alleged to have directly resulted in Plaintiff's termination of his employment with PW Supermarkets. (Motion ¶ 7:25–27).

The cases Defendants cite in support of preemption of the defamation claim are not directly on-point. While it is true that in *Allis–Chalmers Corp. v. Lueck,* the United State Supreme Court held that parties cannot escape the preemptive effect of Section 301 by casting their claims as tort claims rather than contract claims, the Court did not address state law defa-

mation claim in that case. 471 U.S. 202, 210, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). The Court merely addressed a circumstance where a party attempts to evade the requirements of Section 301 by relabeling their contract claims as claims for tortious breach of contract. *Id.* Clearly, there is a difference between avoiding preemption by recasting a breach of contract claim to a tortious breach of contract claim and a state law tort claim for defamation.

Similarly, in *Shane v. Greyhound Lines, Inc.,* the Ninth Circuit held that a state defamation claim was preempted by Section 301 because the CBA requires employers to notify employees of intended disciplinary action in writing, and simultaneously to notify their Union. The Ninth Circuit held that any claim based on the discharge notification was, therefore, "inextricably intertwined" with the CBA. 868 F.2d 1057, 1063 (9th Cir.1989). However, Defendants fail to observe that the Court made two important points to distinguish the case before it from other cases. The Court stated that in addition to the defamation claim being preempted, it was also meritless. Neither the complaint nor the appellate brief alleged specific facts to support the plaintiff defamation claim, i.e., what documents or statements were defamatory, or to whom the defamatory information was published. *Id.*

In this case, Busey alleges specific facts to support his defamation claim. He alleges that Defendant Del Monte composed a memorandum containing false statements and published that memorandum to various employees, including non-managers using the company's Internet and Intranet. Defendants contend that Busey's defamation claim is "inextricably intertwined" with the Union agreement because the alleged defamatory statements are alleged to have caused the termination of his employment. (Motion ¶ 25–26). Although

this is one of the allegations, Defendants ignore Busey's allegation that as the proximate result of Defendant Del Monte's publication of the false statements, he has "... suffered loss of his reputation, shame mortification, and hurt feelings...." (Complaint ¶ 20).

In addition, the *Shane* Court distinguished *Tellez v. Pacific Gas and Elec. Co.*, 817 F.2d 536 (9th Cir.1987), where the employee's non-preempted defamation claim was based on his manager's sending copies of his discharge letter, which stated that he was observed purchasing cocaine to eleven other PG & E managers. *Shane,* 868 F.2d at 1063. The *Tellez* Court held that the CBA did not envision that kind of behavior and was "silent on work conditions, and vague on disciplinary formalities." Examination or interpretation of the CBA would not, therefore, have helped resolved the plaintiff's claim against PG. & E. *Id.* at 538–539.

█ Similarly, Busey's claim for defamation does not require an interpretation of the CBA. The trier to fact will need to consider the actual statements that were written in the memorandum, whether they were false, whether they were published, and whether there was an applicable privilege defense. Further, unlike *Shane,* the allegedly false statements were not made in the course of a grievance proceeding specifically outlined in the CBA, but rather, in an informal memorandum. Defendants have not directed the Court to any provision in the CBA governing what is to be written in performance evaluation (presuming the informal memorandum could be so construed), or who may look at them. The Court own's independent reading of the CBA did not yield a different result. Plaintiff's claim for defamation is, therefore, an "independent" state claim and is not preempted by Section 301.

The parties dispute whether Plaintiff's claim for defamation is barred by the statute of limitation. The key to resolving the dispute rests with California "delayed discovery rule", i.e., the accrual date of a cause of action is delayed until the plaintiff is aware of his or her injury and its cause. (Opposition ¶ 7:21–22; Rely ¶ 6–7). Since the Court is remanding this claim to state court, the Court will yield to the state court to resolve this exclusively state-law issue.

**B.** ***Plaintiff's Second and Fifth Claims for Intentional Infliction of Emotional Distress are Not Preempted Because the Second Claim is Connected with the Underlying Claim for Defamation and the Fifth Claim Does Not Require Analysis of the CBA.***

As stated above, the preemption inquiry turns on whether analysis of the CBA is required to resolve the state claims. In the context of claims for infliction of emotional distress, the courts have generally found that analysis of the CBA is necessary to resolve such a claim if the conduct which allegedly gave rise to the emotional distress is addressed by the CBA. Thus, while emotional distress claims are often found to be preempted for this reason, the Ninth Circuit has clearly "recognized that if a claim for intentional infliction of emotional distress arises from conduct not addressed by a [CBA], such a claim may not necessarily be preempted." *Milne Employees Assoc. v. Sun Carriers,* 960 F.2d 1401, 1412 (9th Cir.1991); *see Tellez,* 817 F.2d at 539; *Perugini v. Safeway,* 935 F.2d 1083, 1088–1089 (9th Cir.1991). Here, Busey contends that Defendants are liable for intentionally infliction of emotional distress based on two different areas of conduct: (1) Defendant Del Monte's alleged defamation of him, and (2) Defendants' alleged unorthodox manner in discharging him. As explained below, the Court concludes that Plaintiff's claims for

emotional distress are not preempted with respect to either conduct.

### 1. Intentional Infliction of Emotional Distress Based on Defendant Del Monte's Alleged Defamation.

Since this Court has held that Plaintiff's defamation claim, which is the underlying claim is not preempted, neither is Plaintiff's Second Claim for intentional infliction of emotional distress. *see Tellez* 817 F.2d at 538–539, (holding that Section 301 did not preempt an employee's claims for intentional infliction of emotional distress where the underlying claim for defamation was not preempted by Section 301).

### 2. Intentional Infliction of Emotional Distress Based on Defendants Alleged Unorthodox Manner in Discharging the Plaintiff.

■ Ninth Circuit case law provides that the LMRA preempts an intentional infliction of emotional distress claim when the CBA governs the offending behavior. *see Cook v. Lindsay Olive Growers*, 911 F.2d 233, 239–40 (9th Cir.1990) (holding that employee's wrongful termination-based emotional distress claim was preempted because whether the employee's actions were outrageous for purposes of this claim depended on the interpretation of the CBA's provision for "just cause" discharge); *Harris v. Alumax Mill Products, Inc.*, 897 F.2d 400, 402–403 (9th Cir. 1990) (holding that Section 301 preempted intentional infliction of emotional distress claim based on breach of convent of good faith and fair dealing, because the breach claim alleged wrongful termination through the application of the employer's established attendance policy and required interpretation of the CBA); *Hyles v. Mensing*, 849 F.2d 1213, 1216 (9th Cir. 1988) (holding that emotional distress complaints based on conduct governed by the CBA were preempted).

■ To the extent that Plaintiff's Fifth Claim for intentional infliction of emotional distress arises out of his allegations of the unorthodox manner in which he was discharged, it is distinguishable from *Cook, Harris,* and *Hyles.* In *Cook,* the basis for emotional distress claim was wrongful discharge, which was directly based on the CBA terms regulating seniority and work transfers. 911 F.2d at 239. The collective bargaining agreement between Plaintiff's Union and PW Supermarkets, Inc., merely states, "Grievances on the discharge or suspension of an employee shall be submitted in writing to the Employer within then (10) working days of the receipt of notice by the Union." (CBA ¶ 13). A straightforward reading of these terms yields just one interpretation, that is, interpretation of the CBA is required when an employee wishes to challenge the *fact* that he was discharged, rather than the *manner* in which he was discharged. Thus, Busey's basis for the Fifth Claim of intentional infliction of emotion distress includes conduct not covered by provisions of the CBA. For example, the Plaintiff alleges on the day of discharge, a manager "publicly humiliated [him] ... [when] the manager walked [him] out of the front of the store and orally affirmed and informed [him] of his discharge in front of customers and his fellow co-workers. [This] was an unorthodox manner in which [he] was discharged.... Plaintiff was emotionally distressed due to the attention imposed upon him by such publicity." (Complaint ¶ 41–43)

The above described conduct is unrelated to any interpretation of the CBA. Defendants have not directed the Court to any provision in the CBA governing how employees are to be discharged, i.e., whether a Union employee is to be escorted to the front of the supermarket and be discharged publicly. Additionally, unlike the claims for emotional distress in *Harris*

and *Hyles,* Plaintiff's emotional distress claim does not rest on allegations of the employer's failure to follow the terms of the CBA or on misapplication of its provisions as it relates to how an employee should be discharged.

In summary, the CBA does not contain provisions governing allegations regarding false statements in performance evaluation or the issue of false statements made to unprivileged employees, or whether employees are to be escorted out in front of the supermarket and publicly discharged. Most of the conduct alleged by Plaintiff to have caused him emotional distress are not controlled by provisions of the CBA. Thus, examination or interpretation of the CBA would not help this Court to determine whether those conduct were extreme and outrageous.

The parties dispute whether Plaintiff's claims for intentional infliction of emotional distress are barred by the statute of limitation. Similar to the Defamation Claim, the California "delayed discovery rule" applies and the Court will yield to the state court to resolve this issue on remand.

### C. *Plaintiff's Third Claim for Negligent Training and Supervision is Preempted by Section 301.*

Plaintiff's Third Claim for negligent training and supervision, asserted against Defendant Buck and Defendant P.W. Supermarkets Inc., alleges that these Defendants owed Plaintiff a duty to ensure that Defendant Del Monte had the qualifications and training in order to adhere to "company principles with respect to reviewing and/or disciplining employees and communicating professionally with other company personnel, and that an undue risk to persons such as the Plaintiff would exist...." (Complaint ¶ 31). The complaint alleges that Defendants knew or should have known that Defendant Del Monte

was "either unqualified, unable, or unwilling to adhere to company principles...." but failed to properly train and supervised Defendant Del Monte which resulted in Plaintiff's being defamed by Del Monte (Complaint ¶ 32–34).

■ Any duty to effectively train and supervise managers, or breach of such duty, is inextricably intertwined with the issue of discipline. Here, the CBA does specifically address the issue of discipline and related procedure. The CBA required employers to notify employees of intended disciplinary action in writing, and simultaneously to notify their Union. (CBA ¶ 13) ("In the event a dispute arises during the term of this Agreement related to the interpretation and/or application of any of the sections of this Agreement, the matters in dispute, in all their particulars, shall set forth in writing by the complaining party and served upon the other. The Employer will notify the employee involved and the Local Union, in writing of any discipline within ten (10) days of the discipline"). Thus, in determining whether Defendant Buck and Defendant P.W. Supermarkets had a duty and/or breached any duty of proper training and supervision of upper management employees, it would be necessary to consider the disciplinary provision of the CBA. As such, the Plaintiff's claim for negligent training and supervision is preempted by the LMRA.

### D. *Plaintiff's Fourth Claim for Breach of Contract and Implied Covenant of Good Faith and Fair Dealing and Sixth Claim for Wrongful Discharge are Preempted.*

■ Plaintiff's Fourth Claim alleges:

P.W. Supermarket represented to its employees ... including Plaintiff, in various writings, including but not limited to, personnel policies, company proce-

dure manuals, and employees guidelines that their employment relationship would be based on good faith, that employees would be treated fairly and equitably, and that employees would be judge on the basis of individual merit and ability, and that employees would not be subjected to public reprimand or humiliation.

(Complaint ¶ 36). Claims for breach of implied covenant of good faith and fair dealing are "designed to protect the job security of employees who at common law could be fire at will." *Newberry v. Pacific Racing Ass'n,* 854 F.2d 1142, 1147 (9th Cir.1988), *citing Garibaldi v. Lucky Food Stores, Inc.,* 726 F.2d 1367, 1373 n. 9 (9th Cir.1984). Section 301 preempts claims for the implied covenant of good faith and fair dealing when an employee has comparable job security under the CBA. *Newberry,* 854 F.2d at 1147, *quoting Young,* 830 F.2d at 999; *Jackson v. Southern California Gas Co.,* 881 F.2d 638, 645 (9th Cir. 1989). The CBA between Busey's Union and P.W. Supermarkets provides for settlement of disputes, including grievances procedure for discharge or suspension, to safeguard that right. The Plaintiff admits that he contacted a union representative on the very day he was terminated from P.W. Supermarkets. (Complaint ¶ 23). However, Plaintiff failed to follow the CBA grievance's procedure which requires that an employee "...*shall* ... [submit] in writing to the Employer within ten (10) working days of the receipt of notice by the Union." (CBA ¶ 13). Plaintiff asserts that he diligently followed up with his oral (telephonic) grievance to the union representative on six different days. (Complaint ¶ 23) Yet, Plaintiff did not take the time to put his grievance his writing as required by the CBA. Thus, Plaintiff's "right to [any] reinstatement [through a] grievance hearing was based directly on the terms of the CBA." *Cook,* 911 F.2d at 239. In sum, Ninth Circuit case law has consistently held that a collective bargaining agreement provides comparable job security to union members and thus, a claim for breach of implied covenant of good faith and fair dealing is preempted by Section 301.

While Plaintiff's complaint alleges breach of a contract without specific reference to a CBA, Plaintiff is alleging breach of the CBA. By careful pleading, a plaintiff cannot avoid federal preemption. Federal courts accordingly must recharacterize complaints which omit federal law essential to a claim, or which cast in state law terms a claim that can be made only under federal law. *Fristoe v. Reynolds Metals Co.,* 615 F.2d 1209, 1212 (9th Cir.1980); *see Buscemi v. McDonnell Douglas Corp.,* 736 F.2d 1348, 1351 (9th Cir.1984). Thus, the Ninth Circuit precedent is clear that where a relationship is otherwise governed by a collective bargaining agreement, state law theories of breach of contract and implied covenant of good faith and fair dealing are preempted, and subject to recharacterization as Section 301 claim for breach of contract. *Fristoe v. Reynolds Metals Co., supra,* at 1212.

■ In this case, Busey fails to satisfy certain mandatory prerequisites to maintaining breach of contract and wrongful discharge claims as Section 301 claims. If an employee is covered by a collective bargaining agreement providing for mandatory arbitration of grievances, he may only bring an action against his employer if he shows that he exhausted his arbitration remedy, and that his union violated its fair representation duty in processing his grievance. *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). The collective bargaining agreement between P.W. Supermarkets and the Bakery, Confectionary and Tobacco Workers' International Union, Local 24 AFL–CIO, provides for mandatory grievance arbitration. Be-

cause Plaintiff alleges neither exhaustion of this grievance and arbitration remedy, nor breach by his union of its representation duty, to the extend Plaintiff's Fourth and Six causes of action are recharacterized as Section 301 claims, they must be dismissed.

Plaintiff contends that his wrongful discharge claim is not preempted. The California Labor Code § 2922 provides, "An employment, ... may be terminated at the will of either party on notice to the other." Plaintiff asserts that Defendants violated this Code by failing to give him reasonable notice as to the cause of his termination. Labor Code § 2922 has been recognized as creating a presumption. The statute creates a presumption of at-will employment which may be overcome "by evidence that despite the absence of a specified term, the parties agreed that the employer's power to terminate would be limited in some way, e.g., by a requirement that termination be based only on 'good cause'." *Haycock v. Hughes Aircraft Co.* 22 Cal.App.4th 1473, 1488, 28 Cal.Rptr.2d 248 (1994). California case law exhibits a well-established exception that an employer may violate § 2922 in terminating an employee when the discharge violates "fundamental principles of public policy." *Cleary v. American Airlines, Inc.*, 111 Cal.App.3d 443, 168 Cal. Rptr. 722 (1980); *Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 254 Cal.Rptr. 211, 765 P.2d 373 (1988). Thus, the cases Plaintiff cites in support of this claim are inappropriate insofar as they address termination as a violation of public policy. Plaintiff does not allege that his termination was against public policy, however, he does allege that it violates the labor code. The Code, read in conjunction with case law, provide a clear line between at-will employment and discharge as a violation of public policy. Plaintiff's employment was at all times governed by the CBA and no other contract. Under the terms of the employment contract, the parties were required to follow certain procedures when terminating an employee. Any grievance relating to the employee's termination was required to be filed, in writing. Plaintiff failed to follow this procedure. Thus, Plaintiff's breach of contract and wrongful termination claims are preempted by Section 301.

More importantly, to the extent Busey's breach of contract and implied covenant of good faith and fair dealing claims are recharacterized as Section 301 claims, they are alternatively subject to dismissal as time barred by the six month statute of limitation. *see DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983); *Moore v. Local 569 of International Brotherhood of Electrical Workers*, 989 F.2d 1534, 1542 (9th Cir.1993). Any claim for breach of contract relating to the collective bargaining agreement is barred by applicable statute of limitations, which requires that such claims be filed within the six months statute of limitation applicable under LMRA. Plaintiff was discharged on October 22, 2002. He filed the instant action on December 9, 2004. The statute of limitation expired more than one and a half years prior to the filing of his complaint.

## V. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss Plaintiff's Third, Fourth and Sixth claims is GRANTED. The Court hereby REMANDS Plaintiff's First, Second, and Fifth claims to state court pursuant to 28 U.S.C. § 1367(3).