[No. 40468-7-I.    Division One.    January 26, 1998.]

BEVERLY ANAYA, *Appellant*, v. LORENE GRAHAM, ET AL.,
*Respondents*.

*Jeffrey P. Fairchild* of *Adelstein, Sharpe & Serka*, for appellant.

*Philip E. Rosellini* and *Daniel T. Parsons* of *Law Offices of Philip E. Rosellini*, for respondents.

BECKER, J. — An employer who employs fewer than eight persons is exempt from private suit under Washington's Law Against Discrimination. The trial court ruled the threshold count of eight must exclude any employee who does not actually perform work on the pertinent date. We reverse, and hold the key inquiry is whether an individual

has an employment relationship with the employer on the date in question. We adopt the "payroll method" of counting with respect to both full-time and part-time employees.

This case was resolved in the trial court on summary judgment. The court ruled in favor of the defendants, relying on the small employer exception to dismiss a claim of disability discrimination. Defendant Lorene Graham is the sole stockholder and president of Point Roberts Gas Barn, a corporation. She also owns and operates Gulf-Aire Mobile Villa, a sole proprietorship. Graham, in 1991, hired plaintiff Beverly Anaya as a bookkeeper for the two businesses. Anaya used a computer owned by Gas Barn to do much of her bookkeeping work at home.

Viewed in the light most favorable to Anaya,[1] the record reflects that on February 4, 1995, Anaya told her manager, Larry Kipling, that she had just learned she had cancer. She told him she would use her accumulated vacation time for the surgery she would soon undergo. She also told him she could continue to work at home after the surgery. Kipling did not believe Anaya would be able to return to work after the surgery, and said he would check with his own doctor about the likelihood of that happening.

On Wednesday, February 8, Kipling removed Gas Barn's computer and bookkeeping records from Anaya's home. Anaya again met with Kipling to inform him there was a chance the cancer had spread to her liver. On Saturday, February 11, Kipling terminated Anaya's employment, giving vague economic reasons. The termination, occurring shortly before her scheduled surgery, emotionally devastated Anaya.

■ Anaya sued the defendants for disability discrimina-

---

[1] *Tanner Elec. Coop. v. Puget Sound Power & Light*, 128 Wn.2d 656, 668, 911 P.2d 1301 (1996) (reviewing a summary judgment, an appellate court views the facts and reasonable inferences therefrom in the light most favorable to the non-moving party).

tion, negligence, and outrage, and now appeals the dismissal of those claims. We review the issues de novo.[2]

The Washington Law Against Discrimination[3] prohibits an employer from taking adverse employment actions against any person on account of a physical disability.[4] The statute defines an employer as "any person acting in the interest of an employer, directly or indirectly, who employs eight or more persons."[5] Employers of fewer than eight persons are exempt from private causes of action under the Law.[6]

In the trial court, Anaya sought to demonstrate that Gas Barn employed eight or more persons on February 8th, the date Kipling removed the computer from her home, and on February 11th, the date he terminated her employment. The parties stipulated that eight persons received payroll checks from Gas Barn for the period covering those dates. But the trial court excluded from the count two cashiers—full-time employee Allison Remfert and part-time employee Tim Campbell—each of whom did not work, received no pay, and were not on call on one of those dates. Because Gas Barn had fewer than eight persons present at work on the dates when the allegedly discriminatory conduct occurred, the trial court concluded Gas Barn was exempt from suit.

Interpreting the Law Against Discrimination, courts may look for guidance to regulations issued by the Human Rights Commission.[7] The regulations provide several ways to determine whether an employer has eight em-

---

[2]*Tanner Elec. Coop. v. Puget Sound Power & Light*, 128 Wn.2d at 668.

[3]RCW 49.60.

[4]RCW 49.60.030, .180.

[5]RCW 49.60.040(3).

[6]*Griffin v. Eller*, 130 Wn.2d 58, 64, 922 P.2d 788 (1996).

[7]*See Marquis v. City of Spokane*, 130 Wn.2d 97, 111, 922 P.2d 43 (1996) (a court "must give great weight to the statute's interpretation by the agency which is charged with its administration, absent a compelling indication that such interpretation conflicts with the legislative intent."). *See also Impecoven v. Department of Revenue*, 120 Wn.2d 357, 363, 841 P.2d 752 (1992) (despite granting def-

ployees. For example, an employer will be considered to have eight employees if it "[e]mployed eight or more persons for any part of the day on which the unfair practice is alleged to have occurred."[8] The trial court concluded that the phrase "any part of the day" qualifies the meaning of "employed" and can only mean the commission interprets the Law Against Discrimination as not counting full-time employees on their days off.

Gas Barn advances the same argument on appeal, and we disagree with it. The statute itself does not place any qualifiers on the term "employs." It is improbable that the commission intended, merely by using the phrase "[e]mployed . . . for any part of the day," to restrict the statutory definition of "employed" to persons actually present at work. More likely, that language serves to include within the eight-person threshold any person who began work or was terminated sometime during the day.[9] We conclude the regulations of the Human Rights Commission do not resolve the issue presented by this case: does the statute require that a person actually perform work on a given day in order to be counted as employed on that day? We must look elsewhere to find an answer to that question.

In addition to agency regulations, courts can also look to interpretations of analogous federal laws for guidance on issues of statutory interpretation.[10] Here, the analogous federal statute is Title VII of the Civil Rights Act of 1964, which applies to any employer who "has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar

---

erence to agency interpretations, courts retain the ultimate authority to determine the purpose and effect of a statute).

[8]WAC 162-16-160(4)(a)(i).

[9]See *Walters v. Metropolitan Educ. Enters., Inc.*, 519 U.S. 202, 117 S. Ct. 660, 664, 136 L. Ed. 2d 644 (1997), for discussion of the similar phrase "for each working day" in the analogous federal statute.

[10]*Marquis v. City of Spokane*, 130 Wn.2d at 113.

year."[11] In *Walters v. Metropolitan Education Enterprises, Inc.*,[12] decided after the trial court made its ruling in this case, the United States Supreme Court was asked to decide under what circumstances an employer "has" an employee for purposes of Title VII. The Court agreed with the plaintiff employee that the test should be simply whether the employer has an employment relationship with the individual on the day in question. The individual's name on the employer's payroll for the period covering the pertinent dates will ordinarily demonstrate an employment relationship, whether or not the person actually performed work on that day. Relying primarily on *Walters*, Anaya contends the parties' payroll stipulation is dispositive.

We perceive no fundamental conflict between the regulations promulgated by the Human Rights Commission and the payroll method adopted by the *Walters* court. The payroll method is easier to understand and apply than a test, as proposed by Gas Barn, which would require the court to determine whether a particular individual actually reported to work on a specific day. And following *Walters* would serve the objective of making interpretations of RCW 49.60 consistent with federal antidiscrimination law.[13] For these reasons, we hold that a person's employment relationship with the employer determines whether that person is employed for purposes of the Law Against Discrimination's eight-employee threshold. We adopt the payroll method as an effective means of demonstrating whether a person has an employment relationship on the day an alleged unfair employment practice is alleged to have occurred.

Applied to the facts in the record, the payroll method results in the inclusion of five full-time employees who were on the payroll on both February 8th and February

---

[11]42 U.S.C. § 2000e(b).

[12]*Walters v. Metropolitan Educ. Enters., Inc.*, 519 U.S. 202, 117 S. Ct. 660, 664, 136 L. Ed. 2d 644 (1997).

[13]*See* WAC 162-16-160(3)(c) (Human Rights Commission intends its regulations to be consistent with federal law).

11th: Larry Kipling, Amy Keeton, E. Torres, Beverly Anaya; and, even though she did not actually work on February 8, Allison Remfert. Lorene Graham, a corporate officer of Gas Barn, makes six: Lorene Graham was on the payroll both days, even though she was in the hospital on February 8th and 11th.

Anaya also argues for the inclusion of three other employees. The first is Pat Connors, manager of Gulf-Aire Mobile Villa. Anaya contends Pat Connors should be counted because Gulf-Aire and Gas Barn are managed in common,[14] and therefore are treated as one employer under the Commission regulations. Gas Barn claims the two businesses are unrelated, thus raising what could be a factual issue. But the issue of common management need not be resolved, because Pat Connors, who frequently performed odd jobs for Gas Barn, was on Gas Barn's payroll during the relevant time period. He therefore had an employment relationship with Gas Barn, bringing the count to seven.

Anaya claims Beverly Connors, the wife of Pat Connors, was also on call and should be counted. But during the relevant time period, Beverly Connors was employed elsewhere. The only benefit Beverly Connors received from Lorene Graham's businesses was free rent, attributable to her husband's work for Gulf-Aire. Because she was not on the payroll of either business during this time, and Anaya has not otherwise demonstrated that she had an employment relationship with either business, she may not be counted into the eight-person threshold.

The last person to consider is part-time cashier Tim Campbell. He was on Gas Barn's payroll on both February 8th and February 11th, but he actually worked only on February 8th. The Human Rights Commission regulations provide different tests for part-time employees than for full-time employees. In one test, a person working part time is counted as employed on the day on which the unfair practice is alleged to have occurred only if the person

---

[14]*See* WAC 162-16-160(8).

"worked any part of that day."[15] In another, a part-time employee is counted if the person works "one-fifth of full time."[16]

It would defeat the simplicity of the payroll method to apply it only to full-time employees, while using different methods to count part-time employees. We hold that for purposes of including a part-time employee in the eight-person threshold, the inquiry is the same as for a full-time employee: did the individual have an employment relationship with the employer on the date in question, as demonstrated by the payroll? Tim Campbell did have such a relationship. He brings to eight the number of persons employed by Gas Barn on February 8th and 11th.

Accordingly, we reverse the order of dismissal as it pertains to Anaya's discrimination cause of action under RCW 49.60.

We affirm the order of dismissal as it pertains to Anaya's claim for negligent infliction of emotional distress. Anaya claims the public policy against disability discrimination in employment gives rise to a duty not to terminate an employee because of his or her disability. A termination in violation of a specific public policy may provide an exception to the general rule of employment at will, giving rise to an action for wrongful discharge,[17] an intentional tort.[18] But Anaya has provided no authority for the argument that Gas Barn's termination of her employment was negligent, and we do not further consider it.[19]

We also affirm the order dismissing Anaya's claim

---

[15]WAC 162-16-160(5)(a).

[16]WAC 162-16-160(5)(b).

[17]*Roe v. Quality Transp. Servs.*, 67 Wn. App. 604, 607, 838 P.2d 128 (1992). *See also Gardner v. Loomis Armored, Inc.*, 128 Wn.2d 931, 941, 913 P.2d 377 (1996).

[18]*Cagle v. Burns & Roe, Inc.*, 106 Wn.2d 911, 916, 726 P.2d 434 (1986).

[19]*In re Elec. Lightwave, Inc.*, 123 Wn.2d 530, 545, 869 P.2d 1045 (1994) ("An appellate court need not decide a contention not supported by citation to authority.").

of outrage. The fact of termination is not itself sufficient to support the claim.[20] Anaya's claim of outrage presupposes that her termination was wrongful because it violated the public policy of RCW 49.60, and therefore unprivileged. Our disposition of this case will allow Anaya to resolve, in the context of her discrimination claim, whether the termination violated RCW 49.60. If successful, she will be able to obtain emotional distress damages. In this case, therefore, the outrage claim duplicates the discrimination claim. We affirm the dismissal on that basis and, accordingly, need not make the initial screening decision whether the alleged conduct of the employer in terminating her was "sufficiently extreme to result in liability" for a claim of outrage.[21]

Reversed and remanded for trial on the statutory discrimination claim.

WEBSTER and AGID, JJ., concur.

---

[20]*See Dicomes v. State*, 113 Wn.2d 612, 630, 782 P.2d 1002 (1989).

[21]*See Dicomes v. State*, 113 Wn.2d 612 at 630 (quoting *Grimsby v. Samson*, 85 Wn.2d 52, 59, 530 P.2d 291 (1975)) (emphasis omitted). *See also* RESTATEMENT (SECOND) OF TORTS § 46.