**Su HUMBLE, Plaintiff–Appellant,**

v.

**BOEING COMPANY, a Delaware corporation, Defendant–Appellee.**

No. 01–35107.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 9, 2002.

Filed Sept. 18, 2002.

---

Fay Freedman, Seattle, Washington, for the appellant.

Russell L. Perisho, Perkins Coie, Seattle, Washington, for the appellee.

Clifford Freed, Frank Rosen Freed Roberts, Seattle, Washington, for amicus curiae Washington Employment Lawyers' Association.

Dmitri Iglitzin, Schwerin Campbell Barnard, LLP, Seattle, Washington, for amicus curiae International Association of Machinists and Aerospace Workers, AFL–CIO, District Lodge No. 751.

Before: REAVLEY,\* TASHIMA, and RAWLINSON, Circuit Judges.

REAVLEY, Circuit Judge.

Plaintiff–Appellant Su Humble appeals the district court's dismissal of her Washington state law claims on the grounds that they were preempted by § 301 of the Labor Management Relations Act (LMRA), and that the six month statute of limitations for filing an action under the LMRA had expired. Because we find that Humble's state law reasonable accommodation claim is not preempted, we reverse.

## I. Background

Su Humble is a Korean woman who was employed as a fabrication bench mechanic at Boeing in February 1999 when she suffered an on-the-job injury to her shoulder. According to Humble's pleadings, Boeing's medical department recommended that she be given a light duty position, but her supervisor disregarded this recommendation and returned her to her original position. Her injury was allegedly exacerbated, resulting in a cycle over the course of more than a year of medical leaves followed by reinstatement to her original position, or short-term reassignment to modified work followed by return to her original position. Finally, when Humble returned from one of her multiple medical leaves on May 24, 2000, she was told that there were no light duty positions available to accommodate her. She has been offered no other work by Boeing since.

Humble brought suit in state court, alleging that Boeing's conduct violated the ADA, Title VII(because Boeing allegedly is

---

\* The Honorable Thomas M. Reavley, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation.

more accommodating of white workers), Washington's Law Against Discrimination (WLAD), portions of which cover race, nationality, and disability discrimination, and state law torts of intentional and negligent infliction of emotional distress. Boeing properly removed the case to federal court on the grounds that the ADA and Title VII present federal questions. Humble then amended her complaint to delete the federal claims and moved for a remand of her remaining state law claims. The district court denied the motion for remand on the ground that the claims contained in Humble's pleadings were dependent on the terms of the parties' collective bargaining agreement (CBA), and so were preempted by § 301 of the LMRA.[1]

Boeing then filed a motion for summary judgment solely on the grounds that Humble had failed to amend her complaint to seek relief under the LMRA, and that the six-month statute of limitations for a claim under the LMRA had expired. The district court granted summary judgment in favor of Boeing on the statute of limitations issue and dismissed the case. No discovery was ever taken, and the merits of Humble's claims were not at issue.

## II. Analysis

Section 301 of the LMRA provides that all suits seeking relief for violation of a CBA may be brought in federal court. The Supreme Court has held in a variety of contexts that § 301 acts to preempt state law claims that substantially depend on the CBA,[2] that are premised on negotiable or waivable state law duties the content of which has been covered by the CBA,[3] or that seek to enforce the terms of the CBA, for example, breach of contract claims.[4] Section 301 preemption has been applied to generate and protect a body of consistent federal law interpreting CBA provisions,[5] and to prevent plaintiffs from using state law litigation to side-step or alter the balance of the negotiated provisions of a CBA and the arbitration provisions contained therein.[6] However, the Supreme Court has repeatedly admonished that § 301 preemption is not designed to trump substantive and mandatory state law regulation of the employee-employer relationship;[7] § 301 has not become a "mighty oak" that might supply cover to employers from all substantive aspects of state law.[8]

This circuit's recent en banc decision, *Cramer v. Consolidated Freightways,*

---

1. 29 U.S.C. § 185(a).

2. *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 216, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985) (holding that a state law tort of "bad faith" was necessarily based on breach of duties contained in the CBA, and was therefore preempted).

3. *Id.* at 213, 105 S.Ct. 1904. Without attempting to impart a technical meaning to the term, we view a state duty as "negotiable" if it is only a default rule around which the parties may contract, or if the existence of a breach of the duty under state law might be tempered or nullified by agreement of the parties.

4. *Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 104, 106, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962).

5. *Allis–Chalmers,* 471 U.S. at 209–10, 105 S.Ct. 1904 (citing *Lucas Flour,* 369 U.S. at 103–04, 82 S.Ct. 571).

6. *Id.* at 219–20, 105 S.Ct. 1904.

7. *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 408–09, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988).

8. *See Livadas v. Bradshaw,* 512 U.S. 107, 122, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994) (holding that the need to refer to wage rate in the CBA to calculate damages did not preempt a state rule governing the timing of severance pay).

*Inc.*,[9] revised our framework for analyzing § 301 preemption and synthesized the considerations involved. As explained in *Cramer*, the plaintiff's claim is the touchstone for the preemption analysis, and "the need to interpret the CBA must inhere in the nature of the plaintiff's claim" to trigger preemption.[10] To balance properly the policy considerations discussed above, defensive reliance on the terms of the CBA, mere consultation of the CBA's terms, or a speculative reliance on the CBA will not suffice to preempt a state law claim.[11]

■ Whether § 301 of the LMRA preempts Humble's claims is an issue of law, which we review *de novo*.[12]

### A. Reasonable Accommodation Claim

■ Humble's reasonable accommodation claim under the WLAD is not preempted by § 301. In reaching this determination, we first outline the components of a reasonable accommodation claim under Washington law. The WLAD provides that it is an unfair employment practice to discriminate against employees in the terms or conditions of employment on the basis of a physical disability (among other things).[13] The implementing regulations provide in more detail that it is an unfair employment practice to "fail or refuse to make reasonable accommodation for an able worker with a disability ... unless to do so would impose an undue hardship." [14]

(1) Reasonable accommodation means measures that:

(a) Enable equal opportunity in the job process;

(b) Enable the proper performance of the particular job held or desired;

(c) Enable the enjoyment of equal benefits, privileges, or terms and conditions of employment.

(2) Possible examples of reasonable accommodations may include, but are not limited to:

(a) Adjustments in job duties, work schedules, or scope of work;

(b) Changes in the job setting or conditions or work;

(c) Informing the employee of vacant positions and considering the employee for those positions for which the employee is qualified.[15]

Washington law does not require, however, that an employer modify the essential functions of a job or place the disabled employee in a position for which he or she is not eligible.[16]

We must next determine exactly what sort of preemption argument Boeing has made to support the argument that the reasonable accommodation claim is preempted. The Supreme Court has recognized that:

while our cases tend to speak broadly in terms of § 301 'pre-emption,' defendants invoke that provision in diverse situations and for different reasons: sometimes their assertion is that a plaintiff's cause of action itself derives from the [CBA] (and, by that agreement, belongs before an arbitrator); in other instances,

**9.** 255 F.3d 683 (9th Cir.2001) (en banc), *cert. denied*, —— U.S. ——, 122 S.Ct. 806, 151 L.Ed.2d 692 (2002).

**10.** *Id.* at 691.

**11.** *Id.* at 691–92.

**12.** *Id.* at 689.

**13.** WASH. REV. CODE § 49.60.180.

**14.** WASH. ADMIN. CODE § 162–22–025(2).

**15.** WASH. ADMIN. CODE 162–22–065.

**16.** *Pulcino v. Fed. Express Corp.*, 141 Wash.2d 629, 9 P.3d 787, 795 (2000).

the argument is different, that a plaintiff's claim cannot be 'resolved' absent [CBA] interpretation, *i.e.*, that a term of the agreement may or does confer a defense on the employer ...; and in other cases still, concededly 'independent' state-law litigation may nonetheless entail some [CBA] application.[17] Boeing has made all of these arguments, though not clearly separated from each other, to show preemption of Humble's reasonable accommodation claim. We consider each in turn.

### (1.) Derived from the CBA

Boeing argues that section 15.2 of the CBA preempts Humble's reasonable accommodation claim. That provision states, "where an employee returns from a leave of absence ... and he is medically not able to perform the job which he last held, *he will be considered for any job that he is qualified and able to perform*, or (if a surplus occurred that would have affected him during such leave) be subjected to surplusing procedures, all in accordance with Article 22."[18] Boeing argues that this provision directly "covers" the subject matter of the dispute at issue in this case, and so preempts Humble's state law claims. We disagree.

Section 301 preemption is not intended to shield an employer from substantive duties that the state might impose.[19] As the Supreme Court explained in *Lingle*,[20]

just because a CBA provides a remedy or duty related to a situation that is *also* directly regulated by non-negotiable state law does not mean the employee is limited to a claim based on the CBA.[21] In *Lingle*, an employee who had been terminated sued her employer under state law for worker's compensation retaliation.[22] Despite the existence of a termination for "just cause" provision in the CBA under which Lingle might have brought a grievance, she remained free to enforce her separate, non-negotiable state law right not to be retaliated against for filing a worker's compensation claim.[23]

Similarly, Humble need not rely on section 15.2 of her CBA to enforce the "parallel," independent, and more extensive reasonable accommodation duties established by the WLAD. There is no dispute that the duty to reasonably accommodate workers is non-negotiable under Washington law.[24] Although Humble could have decided to pursue a grievance and arbitration based on section 15.2, she has expressly eschewed any reliance on that provision, instead basing her claims on the statutory duty of reasonable accommodation established by the WLAD.

### (2.) Reliance on or Intertwinement with the Terms of the CBA

Boeing has argued more persuasively, however, that the reasonable accommoda-

---

**17.** *Livadas*, 512 U.S. at 124 n. 18, 114 S.Ct. 2068.

**18.** CBA Art. 15, § 15.2 (emphasis added).

**19.** *Allis–Chalmers*, 471 U.S. at 212, 105 S.Ct. 1904("[I]t would be inconsistent with congressional intent under [§ 301] to preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract.").

**20.** 486 U.S. at 408–09, 108 S.Ct. 1877.

**21.** *Id.* at 412–13, 108 S.Ct. 1877 (holding that the mere fact that a CBA contains antidis-

crimination provisions regulating conduct that also violates state law, does not render the state law dependent on the terms of the contract).

**22.** *Id.* at 402, 108 S.Ct. 1877.

**23.** *Id.* at 408, 108 S.Ct. 1877.

**24.** *Commodore v. Univ. Mech. Contractors, Inc.*, 120 Wash.2d 120, 839 P.2d 314, 320 (1992); *Ware v. Mut. Materials Co.*, 93 Wash. App. 639, 970 P.2d 332, 334 (1999).

tion claim is preempted because Article 22 of the CBA, which provides an intricate scheme of seniority, must necessarily be interpreted to determine for which jobs Humble would have been eligible if her accommodation took the form of a transfer to a light duty position. We disagree that Article 22 results in preemption for two reasons.

■ First, we have held that a CBA provision does not trigger preemption when it is only *potentially* relevant to the state law claims, without any guarantee that interpretation or direct reliance on the CBA terms will occur. In *Jimeno v. Mobil Oil Corp.*,[25] for example, we found that California's reasonable accommodation law was not preempted by a CBA because there was a range of accommodations that the employer might have provided that would not have required interpreting the terms of the CBA.[26] A transfer governed by the CBA's bidding process was only one of the available options.[27] More recently, in *Cramer*, we reaffirmed the rule that a mere possible reliance on a CBA provision does not suffice to trigger preemption;[28] at the very least, the fact that a need to interpret the CBA is only hypothetical seriously undercuts a defendant's argument that the state law claim "substantially depends" on the terms of the CBA.

In the present case, as in *Jimeno*, Humble has never argued that she might have been accommodated only by a transfer to another position,[29] and Washington law clearly provides for satisfaction of the reasonable accommodation standard by modification of duties in the employee's former job. Accordingly, Article 22's seniority provisions might not be implicated at all if Humble pursues as a theory of the case that Boeing made no reasonable effort to modify the duties of her existing bench mechanic position,[30] or if she seeks to establish that Boeing simply failed to look for available positions or inform her of any available positions of which it was aware.

■ Second, the mere need to refer to a CBA to determine the jobs for which a disabled employee might be eligible may not be sufficient to trigger § 301 preemption, even if such consultation is certain to occur. In *Jimeno*, California's reasonable accommodation law did not require an accommodation imposing an undue hardship on the employer.[31] In determining undue hardship, the *Jimeno* panel recognized that it would be necessary to consider factors such as facility size, number of employees, composition of the workforce, and facility budgets, many of which might

25. 66 F.3d 1514 (9th Cir.1995).

26. *Id.* at 1527.

27. *Id.*

28. *Cramer*, 255 F.3d at 691, 693.

29. Under liberal notice pleading standards, we do not construe Humble's complaint as alleging that she could only have been accommodated by a transfer to another position, as opposed to modification of her existing job duties.

30. It is not obvious to us that a "modification of an existing position" theory would result in

CBA interpretation, and Boeing has not cited to us any provision of the CBA that would need to be interpreted if Humble pursues that theory. *See Miller v. AT & T Network Sys.*, 850 F.2d 543, 549 (9th Cir.1988) (explaining that under Oregon law, expert opinions and not CBA provisions on job assignments govern whether a disabled employee can satisfactorily perform a job). In the absence of briefing and discussion, we need not resolve whether Washington law on this point is the same as Oregon's.

31. 66 F.3d at 1526–27.

involve consultation of the CBA.[32] The court concluded that looking to the CBA to make these determinations rendered the CBA only "peripherally relevant" to the claim, and so did not mandate preemption.[33]

*Jimeno* is closely on point with respect to the preemption-triggering effect of CBA seniority provisions in the present case, and is consistent with both Supreme Court precedent and our own explaining that the mere need to consult the terms of the CBA in the course of resolving a state law claim does not necessarily result in preemption.[34] We do not discount the possibility that in the course of resolving the reasonable accommodation claim, an interpretive dispute might arise under Article 22 over the jobs for which Humble was eligible. However, any interpretation of the CBA's provisions in the present case is only potential and limited; the CBA terms do not inhere in the nature of Humble's reasonable accommodation claim, nor does the claim, based on non-negotiable duties under Washington law, "substantially depend" upon application and interpretation of seniority requirements.[35]

### (3.) Defensive Use of the CBA to Trigger Preemption

Finally, Boeing argues that when it offers a non-discriminatory justification for its conduct by relying on authorizing CBA provisions, that suffices to trigger preemption of Humble's reasonable accommodation claim. This argument is unavailing after *Cramer*, which held that reliance on CBA provisions to defend against an independent state law claim does not trigger § 301 preemption.[36]

Even if defensive reliance on a CBA might in some circumstances trigger § 301 preemption, Boeing has failed in the present case to identify any provision of the CBA upon which it could rely to demonstrate a "legitimate, non-discriminatory reason" for its alleged failure to accommodate Humble. In contrast to the race and gender discrimination claims in the cases cited by Boeing, for example *Sprewell v. Golden State Warriors (Sprewell I )*,[37] and *Audette v. ILWU*,[38] a reasonable accommo-

---

**32.** *Id.* at 1527.

**33.** *Id.; see also Miller*, 850 F.2d at 548–49 (9th Cir.1988) (holding that the need to reference the CBA's local assignment and transfer provisions would be minimal under Oregon disability discrimination law, and did not result in preemption of that claim).

**34.** *Cramer*, 255 F.3d at 690–91(citing *Livadas v. Bradshaw*, 512 U.S. at 122–24, 114 S.Ct. 2068 (holding that the need to look to the CBA to determine the plaintiff's rate of pay did not trigger preemption)).

**35.** *See id.* at 691.

**36.** *Id.; see also Sprewell v. Golden State Warriors*, 266 F.3d 979, 991 (9th Cir.2001) (*Sprewell II* ) (defensive reliance on CBA terms is insufficient to trigger preemption).

**37.** 231 F.3d 520, 529–30 (9th Cir.2000).

**38.** 195 F.3d 1107 (9th Cir.1999). In *Audette*, plaintiffs brought suit for breach of a settlement agreement between union employees and their employer, when the agreement implicated a variety of CBA provisions. As described by the court, the plaintiffs' state law discrimination claim "turn[ed] on whether defendants' alleged failure to perform the settlement agreement was motivated by retaliation or discrimination." *Id.* at 1113. The state law discrimination claim therefore was not a free-standing claim of discrimination, but substantially depended on proving a violation of the settlement agreement, *id.,* which had expressly incorporated the CBA's grievance procedures and which depended on interpretation of CBA terms. *Id.* at 1112. *Audette* was therefore like *Allis–Chalmers*, in which the Supreme Court held a state law tort of bad-faith preempted because it depended on identifying and proving a breach of the CBA as a necessary component of the

dation claim under Washington law does not hinge on discriminatory animus,[39] leaving this possible basis for preemption in the realm of the hypothetical.

In view of the foregoing, we conclude that Humble's reasonable accommodation claim is not preempted. To the extent that she has stated a claim for retaliation based on her requests for reasonable accommodation, that claim also is not preempted.

### B. Race and National Origin Discrimination Claims

■ Federal Rule of Appellate Procedure 28(a)(9)(A) requires that the appellant's argument contain her "contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." Issues raised in a brief but not supported by argument are deemed abandoned absent manifest injustice.[40] Humble has not outlined the elements of race and national origin discrimination claims, or discussed why the elements of those claims would not substantially depend on the CBA. The preemption issues related to Humble's race and national-origin discrimination claims are sufficiently distinct from the reasonable accommodation claim issues that the failure to address them results in abandonment.

### C. Washington Tort of Outrage

■ Humble claims that Boeing's failure to accommodate her upon her return from medical leave rises to the level of extreme or outrageous conduct under Washington law. Under Washington law, the elements of tort of outrage are:

(1) [E]xtreme and outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3) actual result to the plaintiff of severe emotional distress. The conduct in question must be *so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.*[41]

Section 301 preemption of intentional infliction/outrage claims is a thorny area; we have previously acknowledged its difficulty and the uphill battle a plaintiff typically faces to explain why the tort claim is not being used to alter the terms agreed to under the CBA, or sidestep its grievance procedures.[42] There is a wide range of action or inaction an employer might take that, while seemingly unfair or insensitive, may be the product of negotiated terms of the CBA and subject to arbitration. If, as in *Allis–Chalmers*, the plaintiff's outrage claim attempts to enforce rights or duties established by the CBA while sidestepping

---

claim. 471 U.S. at 216, 218 n. 13, 105 S.Ct. 1904.

In contrast, Humble's reasonable accommodation claim does not hinge on proving any violation of the CBA, nor has she ever entered an agreement to arbitrate independent state-law discrimination claims in accordance with CBA procedures. *Jimeno* is much more closely on point.

**39.** *See Pulcino,* 9 P.3d at 793(comparing disparate treatment and accommodation claims).

**40.** *Acosta–Huerta v. Estelle,* 7 F.3d 139, 144 (9th Cir.1992).

**41.** *Commodore,* 839 P.2d at 321(citations and internal quotations omitted) (emphasis in original).

**42.** *See Saridakis v. United Airlines,* 166 F.3d 1272, 1278 (9th Cir.1999) (noting, in the similar context of an RLA preemption case, the frequency with which we find intentional infliction claims to be preempted); *Galvez v. Kuhn,* 933 F.2d 773, 776 (9th Cir.1991) (noting inconsistency in the case law).

the CBA's dispute resolution processes, it is preempted.

Reviewing circuit precedent, we can discern some general principles to determine when an intentional infliction or outrage tort will be preempted. First, if the CBA *specifically* covers the conduct at issue, the claim will generally be preempted.[43] In such circumstances the allegedly wrongful behavior has been the product of negotiation between the employer and employee, and allowing the plaintiff to proceed with the claim will tend to allow circumvention of the CBA's grievance and arbitration provisions. In *Perugini v. Safeway Stores, Inc.*,[44] for example, the court explained with respect to the plaintiff's intentional infliction claim based on failure to assign her light duty that the claim was preempted because the CBA was plainly the source of any duties related to such a decision.[45] Similarly, in *Cook v. Lindsay Olive Growers*, we held that the CBA preempted an intentional inflic-

tion claim that was based on a failure to change an employee's work schedule so he could attend Friday religious services.[46] The CBA in *Cook* permitted the employer to discharge or transfer an employee for just cause, and the court found that the CBA would need to be interpreted to determine whether the employer's adverse employment actions against the employee were justified.[47] Conversely, we have explained that if the CBA does not "cover" the allegedly extreme and outrageous conduct, the intentional infliction claim will not preempted.[48] In *Perugini*, for example, some of the plaintiff's claims based on harassment and abusive treatment by her boss were not preempted because the CBA did not refer to on the job harassment.[49]

We have also recognized an exception to the general rule stated above: even if the CBA does purport to cover the conduct at issue, the outrage claim still may not be preempted if it has been tacked on to the

---

**43.** *Cook v. Lindsay Olive Growers*, 911 F.2d 233, 239–40 (9th Cir.1990) (holding that the CBA preempted an intentional infliction claim that was based on a failure to change an employee's work schedule so he could attend Friday religious services).

**44.** 935 F.2d 1083 (9th Cir.1991).

**45.** *See id.* at 1088.

**46.** 911 F.2d at 239–40.

**47.** *Id.* at 239.

**48.** *Miller*, 850 F.2d at 550 n. 5 (citing *Tellez v. Pac. Gas & Elec. Co.*, 817 F.2d 536 (9th Cir. 1987)).

**49.** *Perugini*, 935 F.2d at 1088–89. The difficulty, of course, and the source of some inconsistency in our case law, is how to determine whether the CBA "covers" the conduct at issue. Sometimes a fairly broad CBA provision is read as vesting discretion in the employer to take the action at issue and there-

fore as preempting an intentional infliction claim based on that conduct, *see, e.g., Cook*, 911 F.2d at 239; but sometimes a seemingly applicable provision will be read as not contemplating or envisioning the disputed conduct, and therefore the outrage claim will not be preempted. *See Tellez*, 817 F.2d at 539(holding that a CBA provision authorizing discipline of employees did not "envision" circulation of a suspension letter claiming that an employee had purchased cocaine during work hours, and so did not preempt an outrage claim based on that conduct).

The inconsistency often appears to be explainable by whether allegations of overtly abusive and/or harassing conduct are at issue: vague terms vesting discretion in management typically will not be read as authorizing or "covering" abusive conduct, to which the parties would not, and possibly could not (without violating public policy) expressly agree. *See, e.g., Galvez*, 933 F.2d at 779–80(finding no preemption of an intentional infliction claim based on a physical assault and racial slurs, and explaining that reference to the CBA's discretionary provisions could

violation of a separate specific non-negotiable state statute, the violation of which *always* rises to the level of outrageousness. We first outlined this rule in a footnote of *Miller*,[50] and recently applied it in *Cramer*, where we held an intentional infliction of emotional distress claim was not preempted because it was based on the violation of a specific California penal code provision.[51] Specifically, in *Cramer* we held that it was *per se* outrageous to violate California's statute banning the use of two-way mirrors to spy on people in restrooms, so an intentional infliction claim based on conduct violative of that statute was not preempted.[52] The rationale for this exception appears to be that if the plaintiff can peg the tort of outrage to an independent state law duty, the breach of which is always outrageous, then there is little risk that the claim will result in circumvention of the CBA and its arbitration provisions.[53]

■ In the present case, Humble has alleged that Boeing engaged in extreme and outrageous conduct under Washington law by repeatedly placing her back in a job which she could not medically perform. There is a provision of the CBA that fairly directly addresses the situation at issue in this case. The parties have negotiated that when an employee returns from medi-

cal leave and is not medically able to perform his or her existing job, Boeing has an obligation to consider an employee for any other position that is open and that the employee is able to perform.[54] Whether Boeing fulfills this obligation on any given occasion is an issue to be resolved in accordance with the dispute resolution procedures established by the CBA.

To the extent that Humble's outrage claim might alternatively be tacked on to the duties of reasonable accommodation established by the WLAD, the claim must still be preempted under *Miller* and *Cramer*, because we have found no authority in Washington law for the proposition that a violation of that state's reasonable accommodation provisions *always* rises to the level of extreme and outrageous conduct.[55] We see no reason to define failure to reasonably accommodate as inherently outrageous, particularly in the absence of briefing on this point.[56]

Finally, Humble notes that the Washington Supreme Court found an outrage claim based on the employer's race-based harassment and threats against the employee not to be preempted.[57] We are not bound by that Court's preemption analysis, although we are of course obliged to follow its articulation of the state tort of out-

---

not "temper the potential outrageousness of the conduct").

**50.** 850 F.2d at 550 n. 5.

**51.** 255 F.3d at 697.

**52.** *Id.*

**53.** *Miller* and *Cramer* did not explain why a tort of outrage tacked onto a separate state law duty is preempted unless a violation of that statute *always* rises to the level of outrageousness, but that is the rule and we are bound by it.

**54.** CBA Art. 15, § 15.2(b).

**55.** To the extent Humble might peg the outrage claim to alleged race or national origin discrimination, we find that aspect of her claim to have been abandoned on appeal, for the same reasons discussed *supra*, section II.B.

**56.** We note also that at least one Washington Court of Appeals case has held that an outrage claim tacked to a violation of duties established by the WLAD is duplicative of a claim brought directly under that statute, and subject to dismissal on that basis. *Anaya v. Graham*, 89 Wash.App. 588, 950 P.2d 16, 20 (1998).

**57.** *Commodore*, 839 P.2d at 321–22.

rage.[58] In contrast to the more overtly abusive conduct at issue in *Commodore*, in the present case we have no explanation from Humble as to how the alleged conduct (a failure to assign Humble work consistent with her injury) could plausibly be viewed as outrageous independently of either the parties' contractual expectations or the duties established by Washington reasonable accommodation law. Accordingly, her outrage claim is preempted. To the extent that any negligent infliction claim remains before us on this appeal (as none has been separately argued) that claim is preempted for the same reasons.

## III. Conclusion

We hold that Humble's intentional infliction/tort of outrage claim is preempted on the facts of this case, and her race and nationality discrimination claims have been abandoned. Humble's reasonable accommodation claim under the WLAD is not preempted, and we remand that claim for further proceedings consistent with this opinion. Humble requests that a remand to state court for the latter claim be ordered, but we leave it to the district court to make that discretionary determination.

REVERSED AND REMANDED.

58. *See Allis–Chalmers*, 471 U.S. at 213–14, 105 S.Ct. 1904.