**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 16 2003**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

DONALD KARNES,

      Plaintiff-Appellant,

v.

THE BOEING COMPANY,

      Defendant-Appellee.

No. 02-5054

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**
**(D.C. No. 01-CV-235-C)**

Submitted on the Briefs:[*]

Robt. S. Coffey, Tulsa, Oklahoma, for the plaintiff-appellant.

Kimberly Lambert Love and Angela M. Paulsen, of Boone, Smith, Davis, Hurst & Dickman, Tulsa, Oklahoma, for the defendant-appellee.

Before **HENRY**, **BRISCOE** and **HARTZ,** Circuit Judges.

**BRISCOE**, Circuit Judge.

---

    [*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Donald Karnes brought this action against his employer, The Boeing Company, after he was terminated for smoking marijuana on work premises. Karnes filed suit in state court, but Boeing removed the action to federal court pursuant to 28 U.S.C. § 1441(a).[1] The district court granted summary judgment in favor of Boeing and dismissed Karnes' claims. Karnes appeals challenging the district court's jurisdiction and the dismissal of his claims. We exercise jurisdiction pursuant to 28 U.S.C. § 1291, vacate the judgment of the district court, and remand the case with directions to remand to the state court.

## I.

Karnes worked in the paint shop at Boeing's manufacturing facility in Tulsa, Oklahoma, from 1984 until he was terminated in April 2000. While employed at Boeing, Karnes was a member of the International Union, United Automobile, Aerospace & Agricultural Implement Workers of America. As a member of the Union, the terms and conditions of his employment were governed by a collective bargaining agreement (CBA) between the Union and Boeing.

In March 2000, Michael Woolweaver, a Boeing labor relations specialist, received

---

[1] United States district courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Civil actions filed in state courts over which district courts have original jurisdiction "may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." Id. § 1441(a).

2

an anonymous telephone call reporting illicit drug use by Boeing employees behind the paint booth in Building 610. The caller did not identify the employees, but stated drug paraphernalia could be found at that location. Woolweaver and a security specialist found the drug paraphernalia and it tested positive for marijuana. A surveillance camera was installed in the area. In April 2000, the surveillance tape revealed Karnes smoking in the area where the paraphernalia had been found. After Karnes' supervisor and another Boeing management employee confirmed that Karnes appeared on the surveillance tape, Karnes was asked to submit to a drug test. After talking with Union representatives, Karnes informed Woolweaver, in the presence of the nurse and Union representatives, that his drug test would be "hot." Aplt. App. at 51. Karnes' urine sample tested positive for marijuana, amphetamines, and methamphetamines. His employment was terminated because of violation of Boeing's policy regarding the use of illegal drugs on Boeing premises.

Grievances under the CBA are subject to a three-step reconciliation process that culminates in final and binding arbitration if the Union chooses to pursue the grievance. After Karnes was terminated, the Union filed a grievance requesting that Karnes be reinstated. Boeing denied the request for reinstatement. The Union appealed, but subsequently withdrew the grievance without prejudice and the matter was not submitted to arbitration. Karnes filed a complaint against the Union with the National Labor Relations Board (NLRB), alleging the Union had failed to adequately represent him

during his grievance with Boeing. The NLRB determined there was "insufficient evidence to establish that the Union failed to fairly represent [Karnes] in its handling of the grievance pertaining to his discharge." Aplt. App. at 59.

In February 2001, Karnes filed a complaint against Boeing in Oklahoma state court alleging that Boeing violated Oklahoma's Standards for Workplace Drug and Alcohol Testing Act and Oklahoma's Employment Security Act of 1980, and for prima facie tortious conduct. Boeing removed the suit to federal court. The district court concluded it had federal question jurisdiction pursuant to § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, and rejected Karnes' motion to remand. Boeing filed a motion to dismiss which the court converted to a motion for summary judgment. The court granted summary judgment in favor of Boeing and dismissed Karnes' claims. Karnes contends the court erred in denying his motion to remand the case to state court and in granting summary judgment in favor of Boeing.

## II.

We first consider whether the district court had federal question jurisdiction. Specifically, we must address whether the district court was correct in concluding that Karnes' claims were preempted by § 301 of the LMRA. Section 301 provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

4

29 U.S.C. § 185(a).[2]  Shortly after enactment of the LMRA, the Supreme Court held that

§ 301 authorized federal courts to fashion a body of federal common law to be used to

address issues arising out of labor agreements.  See Allis-Chalmers Corp. v. Lueck, 471

U.S. 202, 209 (1985).  "A state rule that purports to define the meaning or scope of a term

in a contract suit therefore is pre-empted by federal labor law."  Id. at 210.  Preemption

arises when an "evaluation of the tort claim is inextricably intertwined with consideration

of the terms of the labor contract."  Id. at 213.  Thus, "as long as the state-law claim can

be resolved without interpreting the agreement itself, the claim is 'independent' of the

agreement for § 301 pre-emption purposes."  Lingle v. Norge Div. of Magic Chef, Inc.,

486 U.S. 399, 410 (1988).

Under the "well-pleaded complaint" rule, the plaintiff is considered the "master of

the claim" and thus the federal question giving rise to jurisdiction must appear on the face

of the complaint.  Garley v. Sandia Corp., 236 F.3d 1200, 1207 (10th Cir. 2001).

However, because plaintiffs often attempt to avoid federal jurisdiction under § 301 by

artfully pleading their claims, "federal courts look beyond the allegations of the complaint

. . . to determine whether the wrong complained of actually arises in some manner from a

breach of the defendants' obligations under a [CBA]."  Mock v. T.G. & Y. Stores Co.,

971 F.2d 522, 530 (10th Cir. 1992) (internal quotation omitted).  Despite our authority to

---

[2]  Thus, § 301 does not preempt suits arising out of contracts between an employer and an individual employee.  See Wooddell v. Int'l Bhd. of Elec. Workers, Local 71, 502 U.S. 93, 98 (1991).

look beyond the complaint, the plaintiff remains the master of his claims and may choose to have his claims heard in state court by avoiding claims based on federal law. See Caterpillar v. Williams, 482 U.S. 386, 398-99 (1987). Thus,

> a *defendant* cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated. If a defendant could do so, the plaintiff would be master of nothing.

Id. at 399 (emphasis in original). "If jurisdiction is challenged, the burden is on the party claiming jurisdiction to show it by a preponderance of the evidence." United States ex rel. Hafter v. Spectrum Emergency Care, Inc., 190 F.3d 1156, 1160 (10th Cir. 1999).

Here, the district court held that Karnes' claims were preempted because (1) his employment was governed by the terms of the CBA; (2) the CBA incorporated Boeing's anti-drug policy; (3) the CBA addressed management's authority to discipline employees; and (4) the CBA provided a grievance procedure for such disputes. Based on these factors, the court concluded that it could not adjudicate Karnes' claims without referring to the CBA and, therefore, removal was proper under § 301. We review the district court's ruling de novo. Garley, 236 F.3d at 1206-07 ("Whether state law is preempted by federal law is a conclusion of law which we . . . review de novo. We review a denial of a motion to remand a claim for lack of removal jurisdiction de novo." (internal citation omitted)).

Karnes alleges that Boeing violated Oklahoma's Drug Testing Act, Okla. Stat. tit.

6

40, §§ 551-565, and, in the alternative, that Boeing violated the public policy behind the Oklahoma Act. His complaint does not specify the section of the Act that Boeing violated, but within the sections he cites is § 562 ("No disciplinary action, except for a temporary suspension or a temporary transfer to another position, may be taken by an employer against an employee based on a positive test result unless the test result has been confirmed by a second test." Okla. Stat. tit. 40, § 562(A).). In order to establish a violation of this section, Karnes must show that Boeing (1) discharged him based on his drug test, and (2) failed to confirm the result through a second test.[3] Neither inquiry requires a court to interpret, or even refer to, the terms of a CBA.

In addition, Karnes' appellate brief argues that Boeing violated § 555(A) of the Oklahoma Act, which requires a company's anti-drug policy to be "uniformly applied," by failing to take disciplinary action against other employees who were allegedly videotaped using drugs. However, whether Boeing has "uniformly applied" its anti-drug policy is a purely factual inquiry and is not "inextricably intertwined" with the terms of the CBA.[4] Cf. Garley, 236 F.3d at 1213 (holding that retaliation claim is not preempted

---

[3] The record does not indicate whether Boeing confirmed Karnes' drug test through a second test or whether Boeing's anti-drug policy required such confirmation. However, because we do not have jurisdiction over Karnes' claims, these are factual inquiries for the state court.

[4] The dissent contends that in order to determine whether Boeing has "uniformly applied" its anti-drug policy (which was incorporated into the CBA), we must refer to the policy and mere reference to the policy triggers § 301 preemption. We disagree because the reach of § 301 preemption is much more limited. See Humble v. Boeing Co., 305 F.3d 1004, 1008 (9th Cir. 2002) (stating that "mere consultation of the CBA's terms . . .

7

where it entails a purely factual inquiry into the conduct and motivations of the employer). Thus, Karnes' Drug Testing Act claims are clearly independent of the CBA and are not subject to § 301 preemption. See Lingle, 486 U.S. at 407 ("[T]his purely factual inquiry . . . does not turn on the meaning of any provision of [the CBA]. Thus, the state-law remedy in this case is 'independent' of the [CBA] in the sense of 'independent' that matters for § 301 pre-emption purposes: resolution of the state-law claim does not require construing the [CBA]."). Further, the fact that the CBA incorporated Boeing's anti-drug policy is irrelevant because "§ 301 does not grant the parties to a [CBA] the ability to contract for what is illegal under state law," Allis-Chalmers, 471 U.S. at 212, and the Supreme Court has "underscored the point that § 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law." Livadas v. Bradshaw, 512 U.S. 107, 123 (1994); see also Cramer v. Consolidated Freightways, Inc., 255 F.3d 683, 693-94 (9th Cir. 2001) (en banc) (holding no § 301 preemption where "the plaintiffs based their claims on the protections afforded them by California state law"). Accordingly, we conclude that Karnes' claims under the Oklahoma Act are not preempted.

Karnes also alleges that Boeing violated the public policy of Oklahoma's Employment Security Act of 1980, Okla. Stat. tit. 40, § 1-101 *et seq*. The purpose of the Employment Security Act is to set up a system of public employment offices and an

_____

will not suffice to preempt a state law claim").

8

unemployment compensation fund to assist Oklahoma's unemployed citizens. Id. § 1-102(1). It is unclear whether this statute provides a private cause of action and, if it does, whether the statute is applicable here. However, because we conclude that we do not have jurisdiction over this claim, we do not address its merits. Karnes' final cause of action is for "prima facie tort." Aplt. App. at 9. This claim is so vague that we are unable to determine whether it is preempted under § 301. Therefore, we also remand this claim to the district court for further remand to state court.

Finally, we emphasize that the burden is on Boeing to show jurisdiction by a preponderance of the evidence. See Spectrum Emergency Care, 190 F.3d at 1160. "Since federal courts are courts of limited jurisdiction, we presume no jurisdiction exists absent an adequate showing by the party invoking federal jurisdiction." Id. Boeing contends that Karnes' claims are subject to § 301 preemption because his employment was governed by the CBA, Boeing's anti-drug policy is incorporated into the CBA, and the CBA provides a grievance procedure for his claims. However, nearly every case brought by a union employee against his employer will involve these factors. Thus, if we accepted Boeing's argument, we could not imagine a scenario where § 301 would not preempt a putative plaintiff's claims. Boeing also argues that Karnes has failed to produce evidence to support his claims. Whether Karnes has presented sufficient evidence to support his claims, however, is not relevant to our analysis. We conclude that Boeing has failed to meet its burden of establishing federal jurisdiction over Karnes'

9

claims.

Because Karnes' claims were not preempted by § 301, the district court lacked removal jurisdiction over these actions and improperly awarded summary judgment in favor of Boeing.  We VACATE the judgment of the district court and REMAND the case to the district court with directions to remand to the state court.

**No. 02-5054, <u>Karnes v. Boeing Co.</u>**

**HENRY**, Circuit Judge, concurring:

I agree with the dissent that if Mr. Karnes is raising his statutory claim based upon a breach of contract between the Union and Boeing, such a claim would be pre-empted. I read the majority opinion to say that the claims that are not pre-empted were based on unfair application and wrongful termination claims arising from the Oklahoma Standard for Workplace Drug and Alcohol Testing Act, Okla. Stat. tit. 40, §§ 551-565, and were independent from any contract that would implicate § 301.

No. 02-5054 - <u>Karnes v. Boeing Company</u>

**HARTZ,** Circuit Judge, dissenting:

I respectfully dissent. The critical issue in this case is what sources of information we may use to determine whether any of Mr. Karnes' claims is preempted by § 301 of the Labor Management Relations Act (LMRA). As the majority opinion recognizes, a state-law claim is preempted by § 301 when resolution of the claim requires interpreting a contract between an employer and a labor union representing its employees. If the determination of whether a claim is preempted had to be based solely on the face of the plaintiff's complaint, then preemption could be avoided by artful pleading. Accordingly, we may look behind the complaint's allegations. *See Mock v. T.G. & Y. Stores Co.*, 971 F.2d 522, 530 (10th Cir. 1992). The majority opinion pays lip service to that proposition but then proceeds to ignore it.

Consider the majority opinion's discussion of § 562 of the Oklahoma Standards for Workplace Drug and Alcohol Testing Act (the Standards Act), Okla. Stat. tit. 40, § 562. That section requires a positive drug test result to be confirmed by a second test. I agree that the section supersedes any contrary provision of a collective bargaining agreement (CBA), and therefore a claim based on a violation of § 562 would not be preempted. But the majority opinion's invocation of § 562 is an act of creative imagination, not founded on the record. The only mention of § 562 in any pleading is the complaint's reference to "40 O.S. 551, *et seq*." Aplt. App. at 6 (emphasis added). Not even on appeal does Mr. Karnes express any reliance on § 562.

If one examines the record, the nature of Mr. Karnes's claim becomes clear enough, and § 301 preemption is then indisputable. I will begin with the complaint. Then I will review the subsequent pleadings in district court to resolve the complaint's ambiguities.

The introductory paragraph of Mr. Karnes's Petition for Damages expresses alternative grounds for his cause of action. It states that he seeks damages from Boeing "for willful violation of 40 O.S. 551, et seq., the Standards for Workplace Drug and Alcohol Testing Act ('Standards Act'); alternatively, for wrongful termination contrary to Oklahoma's public policy pursuant to the Standards Act; for wrongful termination contrary to Oklahoma's public policy pursuant to 40 O.S. 1-101, et seq., the Employment Security Act of 1980 ('ESA'); alternatively, for prima facie tortious conduct . . . ." Aplt. App. at 6.

After 12 paragraphs of factual allegations, the petition continues under three legal-theory headings (not numbered as separate counts) followed by a conclusion. The first heading is "VIOLATION OF THE STANDARDS FOR WORKPLACE DRUG AND ALCOHOL TESTING ACT, 40 O.S. 551, ET SEQ." *Id.* at 7. Under that heading the petition asserts that "[t]he Standards Act was willfully violated by Defendant's actions as those actions are above outlined." *Id.*

The second heading is "WRONGFUL TERMINATION PURSUANT TO TITLE 40 OF THE OKLAHOMA STATUTES." *Id.* at 8. Under that heading he asserts that if

2

the Standards Act theory fails, "Defendant's actions in terminating Plaintiff also constitute a breach of the public policy of the state of Oklahoma as the public policy is enunciated in the Standards Act." *Id.* Also under that heading he alleges that the Employment Security Act "clearly articulates a public policy that calls for **prevention** of unemployment, a premise from which it necessarily follows that an employee should be fired only for cause in a non-discriminatory fashion" and that "Plaintiff was discharged from Defendant in a discriminatory manner" and "in breach of its various public [sic] and agreements with him." *Id.*

Finally, under the third heading—"PRIMA FACIE TORT"—the petition asserts that "Defendant's actions were unjustified and carried out with the intention of causing harm and injury to Plaintiff, constituting prima facie tortious conduct." *Id.* at 9.

I have no idea how one could assess whether Mr. Karnes's cause of action is preempted by § 301 based solely on the paragraphs under the three headings, without knowing more about the underlying factual basis. Some of that basis appears in the introductory 12 paragraphs of the complaint. These 12 paragraphs are then re-incorporated under each legal-theory heading. After describing Mr. Karnes's employment relationship with Boeing, the paragraphs state:

> 5. Plaintiff was filmed together with five (5) other employees in March of 2000 smoking marijuana.
>
> 6. Plaintiff was terminated on or about April 4, 2000.
>
> 7. Defendant entered into an agreement with Plaintiff that if all of

3

the employees filmed smoking marijuana were to come forward, none would suffer the loss of employment.

8. Three employees came forward; the remaining two were prepared to come forward.

9. Defendant unilaterally reneged on this agreement.

10. Plaintiff reached a second agreement with Defendant that if he would take a drug test and come up clean, he would be reinstated.

11. Defendant unilaterally reneged on this agreement.

12. None of the other employees filmed by Defendant had any adverse employment action taken against them by Defendant.

*Id.* at 6-7. No other facts are alleged later in the complaint.

If, as would be the natural inference, these allegations constitute the predicate for each of the legal theories for relief, then it follows that the factual basis for Mr. Karnes's claim is that he was terminated in violation of agreements with Boeing, while none of his fellow miscreants suffered any adverse employment action. Indeed, Mr. Karnes made it perfectly clear that this was the gist of his claim when he described his claim in his Response to Defendant's Supplemental Brief in Support of its Motion for Summary Judgment, filed in federal district court. Challenging the district court's ruling in a December 6, 2001, order that Mr. Karnes's allegations could not be adjudicated without reference to the CBA, he wrote:

> Plaintiff's claim is based upon the non-discriminatory clause of Oklahoma's Standards for Workplace Drug and Alcohol Testing Act wherein the Act states with respect to an employer's written drug testing program that it "shall be uniformly applied to those covered by the policy." 40 O.S. 555(A). Plaintiff's allegations are that "Defendant entered into an

4

agreement with Plaintiff that if all of the employees filmed smoking marijuana were to come forward, none would suffer the loss of employment." There were four others who came forward, but "[n]one of the other employees filmed by Defendant had any adverse employment action taken against them by Defendant."

*Id.* at 96. Our preemption analysis must address the claim as so described—not some hypothetical claim that might fit within the vague generalities of paragraphs 13-31 of the complaint.

Turning to Plaintiff's actual claims, I recognize that Mr. Karnes is not suing for breach of contract. But that is not the test. As we stated in *Garley v. Sandia Corp.*, 236 F.3d 1200, 1208 (10th Cir. 2001), "the preemptive effect of § 301 is *not* limited to state suits alleging violations of labor contracts." The test is whether interpretation of a § 301 contract is necessary to resolve the claim. For example, in *Garley* the plaintiff claimed that he was defamed because his termination for timecard fraud publicly branded him as dishonest. *Id.* at 1211. We concluded that this claim was preempted, because "to determine whether [the plaintiff] was defamed by [the defendant's] actions, the court would inevitably have to examine [the defendant's] rights and obligations under the CBA to decide whether [the defendant's] actions were authorized." *Id.* Similarly, we concluded that one of the plaintiff's claims for intentional infliction of emotional distress was preempted because "[d]etermining whether [the defendant's] conduct during its investigation of [the plaintiff] was 'outrageous,' an element of the tort, requires construction of [the defendant's] rights and obligations under the CBA as that is the

5

reference point against which [the defendant's] action must be scrutinized." *Id.* at 1214.

In my view, it is clear, for two reasons, that Mr. Karnes's claim requires the interpretation of a labor contract. First, Mr. Karnes states that his claim is that Boeing's drug testing program was not "uniformly applied to those covered by the policy," as required by the Standards Act. Okla. Stat. tit. 40, § 555A. Such a claim cannot be resolved, however, without knowing what that policy said. (There is no dispute that the policy was part of the CBA.) Mr. Karnes would have to point to a provision of the policy and explain how his treatment under that provision differed from the treatment of another covered employee. His claim is preempted because it is "substantially dependent on analysis of [the CBA]." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394 (1987) (internal quotation marks omitted).

Second, it is clear from the complaint and the district court pleadings that Mr. Karnes's specific claim derives from alleged breaches of two agreements made after he was filmed smoking marijuana. If the agreements were between Boeing and Mr. Karnes's union, they would come under § 301, even though neither agreement is the CBA covering all employees in the bargaining unit. *See Retail Clerks Int'l Ass'n v. Lion Dry Goods, Inc.*, 369 U.S. 17, 25-28 (1962); *Jones v. Gen. Motors Corp.*, 939 F.2d 380, 382-83 (6th Cir. 1991) (individual employee's grievance-settlement agreement falls under § 301); 29 U.S.C. § 185 (a). I recognize that the complaint alleges that these agreements were between Boeing and Mr. Karnes, so that if the determination of § 301 preemption

6

had to be based on the complaint alone, we would be bound by the complaint's allegation that they were the parties to the contract. As previously noted, however, we can look behind the complaint. Here, we have a compelling motive to do so. The allegation in the complaint fails the smell test because it would be highly unlikely that Boeing would reach a separate agreement with an employee in the bargaining unit. Such an agreement would almost certainly violate the terms of the CBA and our nation's labor laws. *See Medo Photo Supply Corp. v. NLRB*, 321 U.S. 678, 683-84 (1944); *Caterpillar v. Williams*, 482 U.S. at 397-99; 29 U.S.C. § 159(a). Thus, the logical presumption is that the agreements referenced in the complaint were actually between Boeing and the Union.

Reliance on such a presumption is unnecessary here, however, because the record establishes that the union, not Mr. Karnes, was the party that contracted with Boeing. In federal district court Boeing argued in response to Mr. Karnes's objection to removal that the agreement on which Mr. Karnes was basing his claim was negotiated between it and the union. *See* Aplt. App. at 18-19, 21-22. To support its contention, Boeing appended a National Labor Relations Board grievance that Mr. Karnes had filed against his union, in which he indicated that the union and Boeing were the ones who reached the agreement regarding those caught smoking marijuana. *See id.* at 40 (Mr. Karnes's NLRB grievance, stating that "on or about April 6, 2000 [the union] reached agreement with [Boeing] to offer drug counseling assistance and 3 yr probation to all involved parties, if other parties would identify themselves and turn themselves in," and "on or about April 12, 2000

7

[Boeing] rescinded agreement with [the union]"). In response to Boeing's motion, Mr. Karnes conceded that the agreement was between his union and Boeing. *Id.* at 66. Indeed, the section of his pleading in which he addresses Boeing's preemption argument is entitled "The Agreement Between Boeing and [the union]." *Id.* Moreover, none of Mr. Karnes's subsequent district court pleadings challenge Boeing's contention that the agreement falls under § 301 (though he maintains that the claim is not preempted). *See id.* at 96-97, 115-16.

Because the agreements reached after Mr. Karnes was caught smoking marijuana are contracts under § 301, his claim is preempted if resolution of the claim requires interpreting them. In my view, such interpretation is clearly required. Mr. Karnes alleges (1) that Boeing negotiated an agreement promising leniency if all the employees filmed smoking marijuana accepted responsibility, and (2) that the separate agreement was not uniformly applied, as required by § 555A of the Standards Act, because he was fired while the other four employees who came forward suffered no adverse employment action. A determination of whether Mr. Karnes suffered from a non-uniform application of the agreement will inevitably require consideration of what the agreement said. For example, if Boeing's treatment of the implicated employees was required by the terms of the agreement, Mr. Karnes would have no claim of non-uniform application.

Mr. Karnes's claim is no more than a breach-of-contract claim disguised as an Oklahoma statutory cause of action. The claim is preempted, and the district court properly exercised removal jurisdiction.

8